Carl D. WINTON, et al., Appellants,

v.

William P. DAVES, Jr., Appellee.

No. 6231.

Court of Civil Appeals of Texas, Waco.

March 26th, 1981.

Steve Robertson, McMullen, Connally, Robertson, Holliman & Campbell, Inc., Clifton, for appellants.

Stephen L. Holley, Holley & Holley, Dallas, O. Charles Buenger, III, Wilson, Olson, Stem & Farr, Waco, for appellee.

HALL, Justice.

In December, 1977, appellee William P. Daves, Jr., purchased 277 acres of ranch land located in Hamilton County, Texas, from appellant Carl D. Winton. A part of the consideration was Daves's purchase money note for $32,065.32, payable to Winton in 15 annual installments, which was secured by Daves's deed of trust to appellant Steve Robertson on 248 of the 277 acres. In January, 1980, Winton and Robertson initiated proceedings for foreclosure and sale under the deed of trust lien following the alleged failure of Daves to make prompt payment of the second annual installment on the note due on January 1, 1980. Daves filed this suit against Winton and Robertson to enjoin those proceedings. After hearing the case without a jury, the trial court rendered judgment permanently enjoining the foreclosure and sale. This appeal resulted. We affirm the judgment.

The trial court did not file findings of fact and conclusions of law. Although appellants filed a request for findings and

conclusions, it is undisputed that the request was not filed within the time provided in Rule 296, Vernon's Tex.Rules Civ. Proc.; and it was never presented to the trial court in compliance with Rule 297. Appellants do not assert the request was properly made or that the court erred in failing to meet it. Where findings and conclusions are not properly requested and none are filed, all questions of fact are presumed found by the trial court in support of the judgment; and the judgment must be affirmed if it is correct on any theory of law applicable to the case. *Lassiter v. Bliss*, (Tex.1978) 559 S.W.2d 353, 358; *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939).

■ Appellants' basic contention for reversal is that the trial court's implied finding of due diligence by Daves in making the second installment is not supported by any evidence. In testing this "no evidence" complaint, we may consider only the proof and its inferences which support the finding. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952).

The sale and purchase of the Hamilton County ranch land in question was based upon a successful suit by Daves against Winton for specific performance of a contract of sale between the parties. The matter was closed on December 19, 1977, in the City of Hamilton. Daves was unable to attend the closing, and he executed a power of attorney to Stephen Holley for that purpose. Holley is Daves's son-in-law. He is also a lawyer, with offices in the City of Dallas, and he represented Daves in the trial of this case. The power of attorney was only for the closing, and it expired by its terms on December 31, 1977. At the closing, on behalf of Daves, Holley executed a purchase money note payable to Winton in the amount of $32,065.32, as part of Daves's consideration. He also executed a deed of trust on 248 acres of the 277 acres purchased as security for the note. The instruments were signed by Holley as "Attorney-in-fact for William P. Daves, Jr." Robertson is the designated trustee in the deed of trust. Robertson is also a lawyer, with offices in the City of Clifton in Bosque County, and he represented Winton in the trial of this case. The note recites that it is payable to the order of Winton "in the City of Hamilton, Hamilton County, Texas" in fifteen annual installments due on the 1st day of January of each year, beginning on January 1, 1979. The note bears interest at the rate of 6% per annum. The first five installments were for interest only; the others were for the principal and amortized interest. The note contains standard clauses for acceleration of maturity at the option of the holder upon default by the maker "in punctual payment," and waiver by the maker of all notices and demand and presentment for payment.

Winton was indebted to the First Security State Bank of Cranfills Gap, Texas, on a loan of money. Cranfills Gap is in Bosque County, which adjoins Hamilton County. Occasionally, Robertson performs legal services for the bank. The bank's vice-president, Bobby Viertel, was present at the closing between Winton and Daves in the City of Hamilton in December, 1977. Early in 1978, Winton placed Daves's note with the bank and authorized the bank to receive Daves's payments on the note and credit them to Winton's loan account. The bank was not assigned any interest in the note. It simply agreed to hold the note and receive the payments and credit them to Winton's account as an accommodation to Winton. In March, 1978, in a letter to Holley at his office in Dallas, Viertel notified Holley that the bank was holding "Mr. Winton's note from Mr. Daves in safekeeping" and that "all payments need to be forwarded to this bank for the credit on the note." However, this information was not conveyed to Daves by anyone.

Daves resides in Dallas County. He is a member of the board of directors of Swiss Avenue Bank in Dallas, where he maintains his checking account. Learning that he would be out of the state when the first payment was due on Winton's note on January 1, 1979, Daves asked his son-in-law, Holley, to handle the payment to Winton, and he arranged for his bank to deliver a

check to Holley for the payment. On December 27, 1978, Holley mailed the payment, which was in the amount of $1,992.44, to Viertel. It was received and accepted by Viertel on January 4, 1979. There is no dispute about this payment.

Since April, 1979, Daves has held the position of Chairman of the Texas Insurance Commission. His office in that position is in the City of Austin. Also, in 1979, Winton moved to the City of Angleton, in south Texas. Daves and Holley did not know that Winton had moved to Angleton, but Viertel did.

On December 31, 1979, Daves attempted to contact Holley to learn where to make the second payment, due on January 1, 1980. Holley was in the state of Minnesota, and Daves was unable to make contact. He then searched his file to determine the place for payment. The only thing he had reflecting a place for payment was a copy of the note which showed that it was payable to "Carl Winton, City of Hamilton, Hamilton County, Texas." On December 31, 1979, Daves mailed his personal check for the second installment, in the correct amount of $1,923.92, to "Mr. Carl D. Winton, Hamilton, Texas 76531," by certified mail, return receipt requested. Daves testified that he did this "in order to make timely payment of that note." The envelope carrying the payment was mailed by Daves from Austin, and it showed his Austin address for return. It was postmarked in the City of Austin on December 31, 1979, and in the City of Hamilton on January 2, 1980. Daves's check was drawn on the Swiss Avenue Bank in Dallas.

On January 2, 1980, by telephone from Austin, Daves succeeded in contacting Holley in Dallas, and he told Holley about mailing the payment to Winton at Hamilton. Holley assured Daves that the payment had been mailed correctly, but, for the first time, he also told Daves that Winton had designated the bank in Cranfills Gap as his agent for receiving the payments, and that Holley had mailed the first payment to Viertel. On the same day, January 2, 1980, Daves telephoned Viertel in Cranfills Gap.

Daves's testimony regarding his conversation with Viertel, which is not disputed in the record in any material respect, was this: "I told him that I had mailed that check to the only address that I had for Carl Winton at that time, but had learned from [Holley] that it had been made the previous year to him in Cranfills Gap. I told him how I had addressed the envelope, and I asked him, if he would, I didn't know where Carl was, to either contact Carl if he was there locally and ask him if he would go over to Hamilton and pick up the check, or if he, Bobby Viertel, knew the postmaster over there, maybe the postmaster would deliver it to him, or send it directly to him. He told me, says, 'they will in due time, they will return it to you, and if you will, please, when it is returned to you, mail it to me at the Security State Bank in Cranfills Gap,' and I told him at that time, that I was leaving town, going to be out of the state for the entire week of January 6th. He assured me at that time that he would cooperate and do what he could, if he could assist. He said that he would attempt to contact the postmaster and see if he could either pick it up or have it forwarded over to him."

Viertel acknowledged the conversation with Daves. He testified that "Mr. Daves called me and informed me he had mailed the payment to the City of Hamilton addressed to Carl Winton, and asked me what I thought we ought to do. My response was that he needs to contact the postmaster in the City of Hamilton and get it redirected and mailed to the First Security Bank. I, as a courtesy, said that I would also, as a personal courtesy, call the postmaster and relay the message also. My response from the post office department was, they told me that if such a letter was there, not indicating whether or not it was there, they would send it back to Mr. Daves to be forwarded to the First Security State Bank."

Daves did not return to his office after his conversation with Viertel until January 15, 1980. He found his payment directed to Winton had been returned to him in the mail. Because of hearings scheduled and

heard by the Insurance Commission on January 15th, Daves did not redirect the payment to Viertel until January 16th. On that day he simply placed the returned envelope addressed to Winton at Hamilton, unopened, in another envelope and mailed it to Viertel. When asked why he did not open the envelope before sending it to Viertel, Daves said "I had no reason to open it. I just wanted to send it to him in the same form so that he would see that it was properly mailed on the 31st." Daves also included a letter to Viertel in which he apologized for any inconvenience and noted that all future payments would be mailed to the Bank. The payment was received by Viertel at the bank in Cranfills Gap on January 17, 1980.

Meanwhile, on January 7th, on his way to Robertson's office in Clifton, Winton had stopped at the bank in Cranfills Gap and asked Viertel if the second payment on Daves's note had been made. Viertel told Winton that the payment had not been received, and he also told Winton about Daves's call explaining that the payment had been mailed to Winton at Hamilton. At that time Winton did not indicate to Viertel that he intended to do anything about the late payment. On January 7th, after leaving Viertel, Winton traveled with Robertson to Dallas to attend a hearing in a lawsuit then pending there between Winton and Daves. We shall notice this lawsuit in more detail later in this opinion.

On January 15th, Robertson contacted Viertel by telephone, and was told, upon inquiry, that the payment had not been received. Viertel also told Robertson about Daves's call and the mailing of the payment to Hamilton. Robertson then told Viertel that Winton had determined to mature the note and foreclose his lien, that Viertel was not to accept the second payment on the note nor any payment less than the full amount of the note, and that a letter to Viertel setting forth these instructions would follow. On the same day, January 15th, Robertson posted notices that the property would be sold under the deed of trust on February 5th, and he sent a letter to Holley detailing the acceleration, Win-

ton's demand for full payment, and the nonjudicial foreclosure and sale on February 5th.

On January 17th, Viertel received both Daves's letter transmitting the second payment, and Robertson's letter instructing Viertel not to accept the payment. Following the instructions, Viertel returned the payment to Daves. Daves testified that he has always been "ready, willing and able to go forward with that payment," and that he has done everything he knew to do to make it.

At all pertinent times, a lawsuit by Winton against Daves was pending in Dallas County. It stemmed from the sale and purchase of the ranch land in question, and involved disputed rights of the parties regarding certain personal property which included cattle and feed. The suit had been originally filed by Winton in Hamilton County, but it was transferred to Dallas County, the county of Daves's residence, upon Daves's plea of privilege to be sued there. The record in the case before us reflects that Winton was distressed by the transfer of the cattle case to Dallas County, which he considered unfair. It also shows that Winton's actions in maturing the note and beginning foreclosure proceedings were not based upon any concern over the asserted tardiness of the second payment, but, rather, that they were intended and taken by him to force a settlement by Daves of the Dallas County suit on terms favorable to Winton. As the result, Daves did increase his settlement offer, but the case was not settled, and Winton proceeded with the foreclosure.

After several conversations between Holley and Robertson failed to resolve the matter, Daves filed this suit on February 1, 1980, for a temporary restraining order and temporary and permanent injunctions to prevent the foreclosure and sale based upon the second payment. In his petition, Daves tendered the second installment to Winton, and he deposited it into the registry of the court by his personal check drawn on the Swiss Avenue Bank and payable to the

clerk. The check was negotiated by the clerk and paid by Daves's bank. By agreement of the parties, the restraining order issued by the trial court was made into a temporary injunction pending trial on the merits for the permanent injunction.

After the suit was filed, but before trial, Robertson posted new notices for foreclosure and sale to be held on March 4, 1980.

The case was tried on February 22nd. Judgment was rendered on February 29th permanently enjoining foreclosure and sale by Winton and Robertson "by reason of any of the circumstances surrounding the [second] installment payment," and granting Winton the right to withdraw the second payment from the court registry. The judgment recited that the court had determined that "Plaintiff has attempted to make and has made his January 1, 1980 installment payment on the note"; that "Plaintiff has tendered and made the payment by mail ... at the address listed on the note itself, has redirected payment to a bank at the direction of Defendant, and has now paid said amount into the registry of this court"; and that to allow the foreclosure sought by Winton "would be irreparable to Plaintiff for which he would have no adequate remedy at law."

The circumstances set forth above, surrounding the payment in question, may be summarized as follows: On December 31st, without knowledge of Winton's address, Daves mailed the payment, due on January 1st, to Winton simply at "Hamilton, Texas," the only place specified in the note for payment and the only place known to him for that purpose. On January 2nd, the day the envelope carrying the payment was postmarked in Hamilton, Daves learned about and talked with Winton's agent for receiving the payment, apprised the agent of the mailing, and received instructions from the agent for making the payment to the agent. Thereafter, still without knowledge of Winton's address, and without any known reason for doing otherwise, Daves complied completely with the agent's instructions. We hold the evidence is legally sufficient to support the finding that Daves exercised reasonable diligence in the matter.

 There is another reason for affirming the judgment. Equity may grant relief against acceleration of the maturity of a promissory note "when it is procured by inequitable conduct of the creditor himself." *Brown v. Hewitt*, 143 S.W.2d 223, 227 (Tex.Civ.App.—Galveston 1940, writ ref.); *McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex.Civ.App.—Corpus Christi 1980, no writ). The record in our case supports implied findings that Winton's acceleration of Daves's note was not done to protect the debt or preserve its security, but was done solely to force Daves to settle the Dallas County suit in Winton's favor.

Appellants' points and contentions are overruled. The judgment is affirmed.