**Hamlet I. DAVIS, III, Appellant,**

v.

**Rockney D. PLETCHER, Trustee, et al., Appellees.**

**No. 04-86-00215-CV.**

Court of Appeals of Texas, San Antonio.

Feb. 11, 1987.

Rehearing Denied March 12, 1987.

William R. Laughlin, Baytown, for appellant.

Roderick G. Steakley, Cynthia E. Joyce, Dallas, for appellees.

Before BUTTS, DIAL and CHAPA, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a final judgment incorporating a partial summary judgment granting all relief requested by appellees, Rockney Pletcher, Trustee, and J.H. Pletcher and wife, Demerita M. Pletcher (hereinafter referred to as the "Pletchers"). Trial was held on one issue only, the amount of attorney's fees to which the Pletchers were entitled. An award of $39,500.30 was made, pursuant to the jury's special issue findings.

This suit concerns a conveyance of property situated in Real County, Texas, from the Pletchers to appellant Hamlet I. Davis, III (hereinafter referred to as "Davis"). On June 9, 1977, the parties entered into an Earnest Money Contract providing for sale of the property and closing date on or before July 11, 1977, at which time the Pletchers would deliver their deed and Davis would deliver a cash down payment and a promissory note secured by a deed of

trust. The contract also provided that the deed would "contain a covenant of quantity, to the effect that Sellers shall covenant that they have under fence, within the property conveyed, a minimum of 670 acres."

On July 1, 1977, the closing documents were prepared and dated, then mailed to the Pletchers. These documents included a promissory note, in the amount of $210,000.00, secured by a deed of trust, both of which were dated July 1, 1977. The deed also recited this date but was not signed by the Pletchers until July 5, 1977. The deed was then delivered by mail to the title company and the transaction was closed on July 7, 1977.

During June and July of 1982, a dispute arose between the parties concerning a claim made by Davis under the covenant of quantity. On June 30, 1982, Davis' attorney sent a mailgram to Rockney Pletcher which gave notice that a survey of the property disclosed only 628.989 acres under fence and that Davis was claiming an abatement of the purchase price and a refund of interest pursuant to the terms of the deed. Mr. Pletcher received the mailgram that same day.

On July 5, 1982, a copy of the survey plat and field notes prepared by the surveyor was mailed to Rockney Pletcher. The transmittal letter calculated the amount of principal which would be abated based on a minimum acreage shortage of 41.011 acres and the amount of interest which had been overpaid by Davis for the four prior years as a result of said shortage. Davis indicated that he would like to take an immediate credit for the overpayment of interest against the annual installment due on August 1, 1982. He also acknowledged that the terms of the deed gave the Pletchers an opportunity to reduce any acreage shortage within a reasonable period of time by furnishing Davis with possession of land located outside of the fence. In such case, the interest applicable to the abated principal amount of the note would be readjusted.

The Pletchers responded by letter dated July 15, denying Davis' claim on the basis that Davis had failed to furnish them a certified survey within the five year period as required by the deed. The Pletchers claimed that the five year period expired on June 30, 1982, and that the mailgram received on that date was insufficient to satisfy the terms of the deed covenant of quantity. The Pletchers also indicated that if the regular, scheduled note payment was not made on August 1, 1982, all remedies under the note would be pursued.

By letter dated July 30, 1982, Davis replied that his claim was good, he was entitled to an immediate credit for overpaid interest, and that unless some response was forthcoming before the August 1 payment was due, it would be necessary to file a declaratory judgment suit. No response was made by the Pletchers, and suit was filed on August 4, 1982. The full amount of the note installment due on August 1 ($23,801.00) was tendered to the court at that time.

The Pletchers notified Davis by letter dated August 2, 1982, that he was in default due to nonpayment of the August 1 payment and that the note would be accelerated if payment was not received within fourteen days. By letter dated August 31, 1982, the Pletchers notified Davis that the note had been accelerated.

On November 19, 1982, the trial judge entered an order refusing leave for Davis to pay the tendered money into the registry of the court. Because he was aware of the court's action prior to entry of the order, Davis had tendered $19,310.30 to the Pletchers on November 15. This sum represented the annual installment amount minus $4,490.70 which Davis claimed was a credit for overpaid interest due to the acreage shortage. The Pletchers accepted the tender only as an unconditional payment and subject to their acceleration claim. They applied the payment to reduction of the total principal, interest, and penalties owing on the accelerated note.

In his first amended original petition, Davis alleged breach of the covenant of quantity and, in the alternative, breach of the covenant of seisin, the covenant against encumbrances, and misrepresentation un-

der section 27.01 of the Business and Commerce Code. Davis also recited that he brought the suit pursuant to the Uniform Declaratory Judgments Act for the purpose of terminating the controversy between the parties, removing any uncertainties as to proper construction of the instruments and covenants and the respective rights and obligations of the parties, and determining the extent of his claim with respect to acreage over which there is not good legal title. Davis prayed that the trial court find that he was not in default on the note, the acceleration was a nullity, and that the Pletchers be enjoined from exercising the power of sale provision set forth in the deed of trust or taking any other action to foreclose the lien. Davis also requested an award of reasonable attorney's fees and costs.

The Pletchers answered and counterclaimed under the Uniform Declaratory Judgments Act, requesting that the court declare that Davis had defaulted under the note, that the note was properly accelerated and that they were entitled to commence a trustee's sale of the property pursuant to the foreclosure provisions in the deed of trust. They also requested costs and attorney's fees in the amount of $40,000.00, an additional $7,000.00 if appealed to the court of appeals and an additional $5,000.00 if appealed to the Supreme Court.

The Pletchers filed a motion for summary judgment, supported by the affidavits of Rockney D. Pletcher, Trustee, and the deposition testimony of Claude F. Hinkle, Sr., surveyor. Davis filed a response to the summary judgment motion, supported by his own affidavit and that of Claude F. Hinkle. He alleged that questions of material fact existed with respect to: mutual mistake in drafting documents; misrepresentations made by the Pletchers; the survey and the number of acres within the property for which there is not good record title; the diligence exercised by Davis in discovering the Pletchers' representations were false; whether the Pletchers have waived their right to accelerate the note; the affirmative defenses of limitations, waiver, and estoppel advanced by the Pletchers; the credibility of Rockney

Pletcher as to his claim that July 1, 1977 was agreed on to be the date from which the five year notice term was to run; and the true intention of the parties as to whether notice of the actual survey itself was required to be delivered to the Pletchers under the covenant of quantity, if the covenant is found to be ambiguous.

Upon hearing, the trial court granted a partial summary judgment in the Pletchers' favor, disposing of all the issues except that of the amount of attorney's fees to be awarded.

■ By a plethora of points, appellant Davis assails the action of the trial court in partially granting the summary judgment. In the first of the 59 points of error, Davis complains simply that the court erred in granting the motion. The following 41 points elaborate on this first point in a multitude of ways and are addressed by appellant in seven groups of from one to thirteen points. We wish to point out that point of error one would be sufficient to comply with Rule 74, Texas Rules of Appellate Procedure, and to allow argument as to all the possible grounds upon which summary judgment should have been denied. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

Under TEX.R.CIV.P. 166-A, it is the burden of the moving party, the Pletchers, to prove that there exists no material fact issue and that they are entitled to judgment as a matter of law. *Mays v. Foremost Insurance Co.*, 627 S.W.2d 230, 233 (Tex.App.—San Antonio 1981, no writ).

The purpose of the summary judgment rule is to provide a means of summarily terminating a case when it appears that only a question of law is involved and no genuine issue of fact exists. *Straughan v. Houston Citizens Bank & Trust Co.*, 580 S.W.2d 29, 32 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

In considering the propriety of the granting of a summary judgment, the reviewing court must disregard all conflicts in the evidence and must accept as true the proof which tends to support the position of the party opposing the motion. *Farley v. Pru-*

*dential Insurance Co.,* 480 S.W.2d 176, 178 (Tex.1972). All doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Id.* The granting of a summary judgment should be affirmed only if the record establishes a right to the summary judgment as a matter of law. *Clutts v. Southern Methodist University,* 626 S.W.2d 334, 335 (Tex.App. —Tyler 1981, writ ref'd n.r.e.).

■ In points of error nine through fourteen, appellant complains that the trial court's construction of the covenant of quantity was erroneous. We agree.

> The covenant found in the deed reads: Grantors expressly covenant that they have within the property conveyed hereunder, under fence, a minimum of six hundred seventy (670) acres. Such covenant shall be deemed to be broken only if Grantors are furnished by Grantee, within a period of five (5) years from the date hereof, with the results of a subsequent survey prepared by a licensed or certified surveyor or licensed engineer covering the property conveyed hereunder which discloses by certified field notes and plat that there are fewer than six hundred seventy (670) acres under fence; provided, however, Grantors shall have a reasonable period of time within which to furnish Grantee with possession of land located outside of the fence conveyed hereunder, and to the extent any such possession is so given, any claimed shortage shall be reduced on an acre per acre basis. In such event, Grantee shall be entitled to an abatement in the amount of $365.00 per acre of such shortage, from the consideration paid or agreed to be paid under the terms of the promissory note hereinabove described. Such abatement shall be immediately credited to said note and shall be applied against the last payments of principal required to be paid under the terms of such note, and, to the extent such abatement exceeds the then unpaid balance of principal of said note, Grantee shall be entitled to recover the same from Grantors. Grantee shall further be entitled to a refund of interest theretofore paid on the principal amount abated. Following said period of five (5) years, Grantee shall not be entitled to any recourse by reason of any such shortage of acreage.

The trial court interpreted the covenant language as requiring Davis to furnish certified field notes and plat to the Pletchers prior to July 1, 1982. We find that the lower court erred in its construction of the deed covenant and that Davis did give a sufficient and timely notice of his claim under the covenant of quantity.

Under the terms of the deed, Davis had to furnish the Pletchers with "the results of a subsequent survey prepared by a licensed or certified surveyor or licensed engineer covering the property conveyed hereunder which discloses by certified field notes and plat that there are fewer than six hundred seventy (670) acres under fence ..." within a period of five years "from the date hereof."

The Pletchers contend that the covenant language is unambiguous in requiring a copy of the surveyor's field notes and plat to be received by them within the five year period. Davis also contends that the covenant is unambiguous, but that it only required giving "notice" of the alleged acreage deficiency within the five year period. Davis contends, in the alternative, that if the covenant is ambiguous, rules of construction require an interpretation in his favor as a matter of law. After a careful reading of the language used in the covenant, in light of the basic rules of grammar, we agree that the covenant is not ambiguous and that Davis' notice of a claim after the survey was performed was sufficient to comply with the covenant terms.

Rules of grammar underlie all legal rules applicable in the construction of contracts. *Porter v. Milner,* 352 S.W.2d 787, 789 (Tex. Civ.App.—Fort Worth, 1961, no writ). It is fundamental to the rules of English grammar that a verb must agree in number (singular or plural) with its subject. Likewise, a pronoun or other modifier must agree in number with its antecedent. These grammatical axioms clearly show that the singular phrase "which discloses

by certified field notes and plat ..." modifies the singular antecedent "survey" rather than the plural antecedent "results." Thus the grammatical construction of the covenant clearly reveals that it is *the subsequent survey* which must disclose by certified field notes and plat that an acreage deficiency exists, not the "results" which must do so.

Absent an ambiguity, construction of the contract terms becomes a matter of law for the court. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 481 (Tex.1978). This is to be ascertained by the language used in the contract; any construction placed thereon by parties different from that disclosed by the instrument itself is immaterial. *First National Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 148 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). A court will view an unambiguous written contract as reflecting the parties' intent. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968).

Because there is nothing in the contract to indicate an intention to attach any special meaning to the words and phrases used, we will apply the general rule that words and phrases used by the litigants in their agreement will be given their ordinary and commonly accepted meaning. *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 366 (Tex.Civ.App.—Amarillo 1977), *aff'd*, 569 S.W.2d 480 (Tex.1978). Webster's Third New International Dictionary defines "result" as "something that results as a consequence, effect, or conclusion." Giving the word "results" its plain and ordinary meaning reveals that what was required by the deed covenant was a report of the consequence of or conclusion from the performance of a certified survey.

The survey disclosed that there was an acreage shortage. There is no dispute that this conclusion was communicated to the Pletchers via mailgram on June 30, 1982. By any interpretation, June 30, 1982 would fall within the requisite 5 year period. The mailgram clearly referred to the deed and gave notice "that certified field notes of

certified surveyor disclose[d] only 628.989 acres under fence." It also gave notice of a claim for abatement and refund of interest pursuant to the terms of the deed. This was sufficient for Davis to comply with the terms of the covenant of quantity.

As such, the Pletchers' denial of Davis' valid claim was a wrongful denial, and the trial court's approval of this denial, evidenced by granting the Pletchers' motion for summary judgment, was incorrect. We reverse the grant of summary judgment because the Pletchers failed to establish in the record a right to summary judgment as a matter of law. *Clutts v. Southern Methodist University*, 626 S.W.2d at 335.

■ Although we have heretofore dealt with a legal basis upon which we reverse, there are disputed factual issues present which also call for reversal. Paramount among these is determination of the number of acres under fence and the number for which there is good record title. Rockney Pletcher submitted affidavit testimony claiming that the survey furnished by Davis could not be accurate because it had no surveyed starting point. Davis claimed a shortage, according to the survey, of 41.011 acres, acknowledging that a question existed as to the exact acreage deficiency pending determination by the parties of how the survey should be oriented. The affidavit of the surveyor, Claude Hinkle, recited:

> Although the exact acreage over which there is not good legal title cannot be resolved until a determination is made as to the proper orientation of the survey, it is obvious that the actual configuration of the perimeter fences is so out of relationship with the configuration of the surveys within the Pletcher chain of title that a substantial variance is going to exist in any event.

The record clearly reveals that this fact issue is as of yet unresolved and in dispute.

■ We will next address the issue of whether acceleration was proper under the circumstances of this case. The trial court concluded that Davis was not excused from tendering the annual installment payment to the Pletchers on August 1, 1982, despite

the fact that Davis had sought leave to pay into the Court Registry the entire annual installment payment on August 4, 1982. The trial court also found that the Pletchers have a present right to pursue a trustee's sale of the property because of Davis' default in payment on August 1, 1982 and his subsequent failure to cure that default within the 14 day cure period provided by the note. We note here that the trial court did not reject Davis' tender to the Court Registry until November 3, 1982, and that earlier consideration of same may have obviated this issue altogether by allowing Davis to tender payment within the 14 day cure period. The trial court gave no reason for the rejection in its order; however, it appears that the court may have agreed with the Pletchers' argument that Davis should have applied for a temporary injunction to restrain the Pletchers from accelerating the note, and that failure to do so made it impossible to avoid acceleration and subsequent foreclosure, even though the full mortgage payment was tendered to the court. This argument is untenable.

Since the Pletchers have not yet posted for foreclosure, nothing has occurred which would trigger filing of an application for temporary injunction. Furthermore, Davis prayed for *permanent* injunctive relief in his first original amended petition and has yet to have his day in court on this issue.

The Uniform Declaratory Judgments Act gives the judiciary the power to grant other types of relief, in addition to declaratory relief.

Section 37.003(a) of the Act states:

A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

TEX.CIV.PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 1986).

It has been held that

[a]lthough the Act states that any person interested under a deed, will, written contract or other writings, may have determined any question of construction or validity under such instrument, it also specifically provides that such enumeration is not exclusive and does not re-strict the exercise of the general power of the court prescribed in Section [37.003] to 'declare rights, status, and other legal relations.'

*Anderson v. McRae*, 495 S.W.2d 351, 356 (Tex.Civ.App.—Texarkana 1973, no writ).

The Act also provides in Section 37.-011 that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." We think that this provision allows a court to grant injunctive relief prayed for in plaintiff's original petition which is ancillary to the declaratory relief requested. This interpretation is in keeping with the purpose of the Uniform Declaratory Judgments Act, which is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. TEX.CIV.PRAC. & REM.CODE ANN. § 37.002 (Vernon 1986). This is also consistent with the liberal construction and administration mandated by the Act. *Id.* It seems to us, therefore, that if the pleadings and evidence authorize the granting of injunctive relief, the fact that the primary form of the action is declaratory does not preclude a court from granting appropriate remedial or preventive relief. *See Ayers v. General Hospital*, 67 Idaho 430, 182 P.2d 958 (1946) (holding that an action for declaratory judgment may invoke either remedial or preventive relief, and may relate to a right that has been breached or is yet in dispute or a status that is undisturbed but endangered). We find this to be embodied within the spirit of the Act.

Returning to the matter of acceleration of the note by the Pletchers, we believe the exercise of the power of acceleration is a harsh remedy and deserves close scrutiny. *Parker v. Mazur*, 13 S.W.2d 174, 175 (Tex.Civ.App.—San Antonio 1928, writ dism'd agr.). A court should exercise its equity powers to relieve against acceleration when default of the debtor is the result of accident, mistake, or inequitable conduct of the creditor himself. *Id.* Circumstances which tend to show that the holder has exercised his option to accelerate, not for the purpose of protecting his debt or preserving the security therefor,

but for the purpose of coercing the maker to pay the then balance remaining unpaid on the note, or risk foreclosure of the lien on the property securing the debt, are relevant to determining the propriety of equitable relief. *Bischoff v. Rearick*, 232 S.W.2d 174 (Tex.Civ.App.—El Paso 1950, writ ref'd n.r.e.); *McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex.Civ.App.—Corpus Christi 1980, no writ).

In the case at bar, Davis' attempted tender to the court registry clearly showed an ability and willingness to pay the annual installment payment upon determination of the amount of set off, if any, he is entitled to take. We can see no threat to the security of the debt which called for exercise of the option to accelerate. Nor can we find anything indicating that the security for the debt was in any way threatened. To the contrary, it is plainly before us that Davis had expended considerable sums in improving the property, including, but not limited to building a house thereon for a cost in excess of $75,000.00. Davis had also made a $35,000.00 principal down payment at the time of closing and subsequent installments totalling approximately $138,-000.00. Furthermore, after wrongful denial of his claim under the covenant of quantity, and refusal by the Pletchers to even consider any set off to his installment payment under terms of the deed covenant allowing a "refund of interest theretofore paid on the principal amount," Davis' attempt to tender the payment to the court for distribution following resolution of the acreage dispute is further support for Davis' good faith belief that he was entitled to a set off for same.

Given the circumstances before us, including the wrongful denial of Davis' claim by the Pletchers, Davis' substantial investment in the property and ability and willingness to pay, we think this is an appropriate case for application of equitable principles of law. "Equity may grant relief against acceleration of the maturity of a promissory note 'when it is procured by inequitable conduct of the creditor himself.'" *Winton v. Davis*, 614 S.W.2d 464, 468 (Tex.Civ.App.—Waco 1981, no writ),

*citing Brown v. Hewitt*, 143 S.W.2d 223, 227 (Tex.Civ.App.—Galveston 1940, writ ref'd). We hold that the acceleration of the indebtedness by the Pletchers is a nullity.

Points of error forty-four through fifty-nine address the propriety of that part of the judgment awarding attorney's fees to the Pletchers. Because this issue is not necessary to disposition of this appeal, we need not address these points nor other issues raised in points two through forty-three and not discussed herein. TEX.R. APP.P. 90(a).

The judgment of the trial court is reversed and the cause remanded for new trial.