TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00274-CV






Dora Amos and Leo Watson, Appellants


v.


David Ferretti; Carole Ferretti; and DC Industries, Inc., Appellees







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 02-176-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 Appellants Dora Amos and Leo Watson (collectively "Watson") entered into a real
estate contract under which Watson was to buy four parcels of land from appellees David Ferretti,
Carole Ferretti, and DC Industries, Inc. (collectively, "Ferretti"). About nine months after closing
the sale, Ferretti notified Watson that he was in default and that Ferretti was accelerating the note. 
Shortly thereafter, the parties discovered that the title company had made an error, omitting from the
legal description of the land two of the four tracts. Watson sued, seeking a declaratory judgment that
Ferretti breached the contract by failing to convey all of the property contemplated by the parties and
that any default by Watson was therefore excused. Among other claims, Watson sought damages
for breach of contract and statutory fraud and sought equitable relief of reformation and specific
performance. Ferretti cross-claimed, seeking judgment for the debt outstanding under the note. 
After a bench trial, the trial court entered judgment in favor of Ferretti. Watson appeals, arguing that
the trial court's judgment is not supported by legally or factually sufficient evidence and that the
court abused its discretion in denying equitable relief. We affirm the trial court's judgment.


Factual & Procedural Background


 In February 2001, Watson and Ferretti entered into a real estate contract under which
Watson agreed to buy four parcels of land for $780,000; Ferretti agreed to finance $702,000 of the
sales price. In May, the parties closed the sale and Watson executed a lien note for $702,000 and
a deed of trust. Under the deed of trust, Watson was obligated to keep the property in good repair
and condition, maintain insurance and deliver an insurance policy to Ferretti, pay all taxes when due,
and, upon request, provide evidence to Ferretti that the taxes were paid "when due." Ferretti was
given the right to perform any obligations not fulfilled by Watson and demand reimbursement for
those obligations. Ferretti was also allowed to accelerate the note if Watson defaulted and failed to
cure his default. Watson waived his right to receive notice of an intent to accelerate. At the time
of closing, Ferretti was occupying space on the property, and he agreed to either vacate within thirty
days or pay $600 a month in rent. Unbeknownst to Watson or Ferretti, the title company used an
erroneous legal description of the land, omitting two of the tracts from the closing documents,
including the warranty deed and deed of trust. After closing, the parties proceeded under the
assumption that all of the tracts had been conveyed.

 On November 12, 2001, Ferretti forwarded two tax notices he received to Watson,
reminding Watson that proof of payment was required; a third tax notice was mailed directly to
Watson, but a fourth notice was never received by either party. The notices stated that taxes were
due on October 1, 2001, and would become delinquent on February 1, 2002, but also provided
increasing amounts due if paid in February, March, April, May, or June. Watson did not pay the
taxes by February 1. He testified that he decided not to pay by the due date because his bank had
gone into bankruptcy, tying up his funds at the same time that he was obligated to pay about
$100,000 in taxes on various properties. To conserve capital, he chose to pay some taxes late along
with a penalty, which he had done without incident for other properties in the past. Watson testified
that because the bills set out payment amounts due if paid up until June, he believed he had until
June to pay the taxes.

 On February 6, 2002, Ferretti sent Watson a letter titled, "NOTICE OF DEFAULT,"
informing Watson that he was in default for the following reasons:


1. FAILURE TO SUBMIT PAYMENTS PER THE TERMS OF THE REAL
ESTATE LIEN NOTE. . . . 


 NOTE: 11-12-01, A NOTICE WAS MAILED REGARDING DELINQUENCY
 CHARGE.


 CURE TIME FOR THE ABOVE DELINQUENCY - 10 DAYS.


2. FAILURE TO COMPLY WITH GRANTORS OBLIGATIONS IN THE DEED
OF TRUST


 A. KEEP THE PROPERTY IN GOOD CONDITION AND REPAIR.


 B. DELIVER THE INSURANCE POLICY TO BENEFICIARY.


 C. SATISFACTORY EVIDENCE THAT ALL TAXES AND
ASSESSMENTS ON THE PROPERTY HAVE BEEN PAID WHEN
DUE.


 CURE TIME FOR THE ABOVE - 10 DAYS.

Watson responded, enclosing an insurance certificate and demanding $1400 from Ferretti for rent. 
Watson did not pay the taxes, address the issue of taxes in his response to Ferretti, or otherwise
communicate any information to Ferretti about the taxes or his financial situation. On February 21,
Ferretti discovered that the taxes had not been paid. He paid $4,730.32 in delinquent taxes on the
four parcels and sent Watson a letter notifying him that he was in default, giving notice that he was
accelerating the note and demanding payment in full by April 2. Ferretti also stated that Watson's
right to collect rent from the property's tenants was terminated and that Ferretti would immediately
take over rent collection. 

 Watson filed suit on March 27, seeking a declaration that (1) any default by Watson
was excused by Ferretti's earlier breaches of failing to convey all of the property and failing to fully
pay rent after holding over on the property; (2) Ferretti had no right to accelerate the debt or
foreclose on the property; (3) Ferretti had no right to hold the corrected deed "hostage," requiring
Watson to agree to foreclosure or waive his rights to injunctive relief; and (4) Ferretti had no right
to collect rent. Watson sought damages for breach of contract, statutory fraud, breach of duty as
agent, and tortious interference. Watson also sought equitable relief in the form of reformation of
the deed, specific performance, and injunctive relief barring Ferretti from foreclosing on the
property. Ferretti counterclaimed, seeking judgment for the amount due under the deed of trust and
asserting that Watson had not performed necessary maintenance and repairs, paid all taxes when due,
or cured his default after receiving notice from Ferretti. Ferretti stated that he was "fully willing to
execute and deliver a correction deed and any other documents necessary to correct any errors in the
legal description of the Property." Following a bench trial, the trial court ordered that the real estate
documents should be corrected as contemplated by the original real estate contract and that Watson
was liable to Ferretti for $753,402.63, plus pre- and post-judgment interest and attorney's fees.

 On appeal, Watson asserts that Ferretti breached the contract and committed statutory
fraud when he gave Watson a deed conveying only part of the property and that Watson was thus
excused from "any duty under the promissory note and deed of trust." Watson further argues that
the promissory note and deed of trust were the result of a mistake and invalid, that Watson received
inadequate notice of the taxes, that Ferretti had no right to accelerate the debt, and that he is entitled
to equitable relief. 


Standard of Review


 When no findings of fact and conclusions of law are filed, we infer that the trial court
made all findings necessary to support its judgment. Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d
46, 52 (Tex. 2003); see Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989). However, when
the record includes a reporter's record, a party may challenge the legal and factual sufficiency of the
implied findings, and we will review those arguments under the same standards used to review jury
findings. Roberson, 768 S.W.2d at 281. In reviewing legal sufficiency, we view the evidence in a
light that supports the disputed findings, disregarding evidence and inferences to the contrary when
reasonable to do so. Sibley, 111 S.W.3d at 52; see generally City of Keller v. Wilson, No. 02-1012,
2005 Tex. LEXIS 436 (June 10, 2005) (discussing and explaining proper view of evidence under
legal sufficiency review). In reviewing factual sufficiency, we view all of the evidence and uphold
the finding unless the supporting evidence is so weak or the finding so against the overwhelming
weight of the evidence as to be manifestly unjust. AT & T Corp. v. Rylander, 2 S.W.3d 546, 551-52
(Tex. App.--Austin 1999, pet. denied).

 The trial court as finder of fact is the sole judge of the credibility of the witnesses and
the weight to be given their testimony. Raymond v. Rahme, 78 S.W.3d 552, 556 (Tex. App.--Austin
2002, no pet.). The trial court may draw reasonable inferences from the evidence, and its findings
will not be disturbed on appeal unless the record contains no probative evidence on which the court
could base its inferences or the findings are so contrary to the evidence as to be unjust. Carson v.
State, 117 S.W.3d 63, 66 (Tex. App.--Austin 2003, no pet.). Our review of a trial court's
determination of legal principles is much less deferential, and the trial court abuses its discretion if
it misinterprets or misapplies the law. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).


Discussion


 By its order that the parties were to immediately execute a correction deed, correction
lien note, and correction deed of trust, the trial court impliedly found and concluded that a mutual
mistake was made at the real estate closing. By its order that Ferretti should recover $753,402.63
from Watson, the court impliedly found and concluded that Watson had defaulted on the contract
and that the mutual mistake did not excuse him from complying with his contractual obligations.

 The parties agree that the error in the legal description was a mutual mistake. (1) As
discussed below, a mutual mistake does not excuse Watson from his contractual obligations. We
will first determine whether Watson defaulted on the agreement. We will then address Watson's
arguments that the mistake amounted to a breach of contract or statutory fraud excusing Watson's
performance. Finally, we will address whether Watson's default, if any, justified Ferretti's
acceleration of the note and whether Watson was entitled to equitable relief.


Did Watson Default on the Contract?

 In his fourth issue, Watson contends that the deed's language related to tax payments
is unenforceably vague, that he received inadequate notice of the taxes, and that Ferretti waived his
tax-related claims.

 The deed of trust states that property taxes were required to be paid "when due." The
property tax notices themselves state that the taxes "are due on Oct 1st and become delinquent Feb
1st." The notices set out the tax due if paid before January 31, as well as increasing amounts due
if paid in February, March, April, May, or June. Watson argues that he was confused by the
conflicting language of the tax notices and believed he had until June to pay the taxes. Watson
argues that "when due" is vague because statute provides that property taxes are due "on receipt of
the tax bill." See Tex. Tax Code Ann. § 31.02 (West Supp. 2004-05).

 Tax bills are to be mailed to property owners "by October 1 or as soon thereafter as
practicable." Id. § 31.01(a) (West 2001). The failure to send or receive a tax bill generally does not
affect the validity of the tax, penalty, or due date. Id. § 31.01(g). Taxes are due upon receipt of a
tax bill and become delinquent if not paid by February 1 of the next tax year. Id. § 31.02(a); see
Atlantic Richfield Co. v. Warren Indep. Sch. Dist., 453 S.W.2d 190, 201 n.5 (Tex. Civ.
App.--Beaumont 1970, writ ref'd n.r.e.) (former tax code provided that "taxes become due and
payable not earlier than October 1 of the taxable year and may not be paid or accepted prior to that
date," "do not become delinquent until February 1 of the succeeding year," and cannot be collected
through delinquent-tax suit until after July 1 of succeeding year).

 Watson insists that his argument as to the vagueness of the due date is not one of
mere semantics. However, the fact that taxing authorities had in the past allowed Watson to pay
delinquent taxes with an added penalty does not change the fact that he was on notice that taxes paid
after January were delinquent. The tax bills stated that the taxes were due before February 1, that
taxes became delinquent on February 1, and that payments made after that date would incur
additional penalties. Watson testified that he had paid taxes late in the past, that under the contract
he was obligated to pay the taxes when due, that he knew taxes were "due by the end of January,"
and that most of his property taxes were not paid "on time" for 2001. Watson did not communicate
to Ferretti his intention to pay the taxes sometime before June, even after receiving Ferretti's letter
noting that Watson had not provided proof of timely tax payments. Further, although neither Watson
nor Ferretti received one of the four tax notices, Watson was not harmed by the missing notice
because he had in his possession the other three and testified that he had no intention of paying any
of the bills on time. He consciously chose not to pay those bills by February 1 in an attempt to
conserve funds while his financial situation was uncertain. This is not a situation where Watson
failed to pay the missing bill out of ignorance of its existence. He failed to pay any of the bills as
a result of a conscious decision.

 A common-sense reading of the tax code and the tax bills leads not to confusion but
to a conclusion that tax bills are mailed around or soon after October 1, are due at anytime between
October 1 and January 31, and become delinquent on February 1. The trial court did not err in
reaching this conclusion and in finding that Watson understood when the taxes were due and failed
to pay them before they became delinquent, thus defaulting under the deed of trust. 

 Watson goes on to argue that he cannot be considered in default because he did not
receive adequate notice of the taxes and that Ferretti waived any right to hold Watson in default on
the property by his delay in forwarding the tax notices. One tax notice was never received by either
party, one was sent to Watson, and two were sent to Ferretti and then forwarded to Watson. Watson
did not receive the forwarded notices from Ferretti until mid-November. Once Watson received the
forwarded notices, he believed them to be "for purposes of information, to be filed away." Ferretti
testified that he did not know exactly when he received the tax bills, which were sent to an old
address and forwarded by the post office, but said it was "likely" that he received them "around"
October 1.

 If Ferretti received the notices around October 1, he did not forward the notices for
about six weeks, and a mortgagee is required to forward tax notices within thirty days of receipt. See
Tex. Tax Code Ann. § 31.01(j). Watson urges that Ferretti's delay waived any right he had to claim
Watson had defaulted by not paying the taxes when due. We disagree. Ferretti may have delayed
forwarding the tax notices longer than he should have, but his mail was being forwarded, resulting
in some delays, and he did not know when he received the notices, although he thought it was
probably around October 1. Further, the tax code, while imposing a thirty-day window to forward
tax notices, also provides that failure to receive a tax notice does not excuse a property owner from
paying his taxes. Id. § 31.01(g). Watson received three of the four notices by mid-November, more
than two months before the taxes became delinquent. He did not pay any of the taxes by February
1 and testified that he intentionally chose not to pay for financial reasons, not because of any lack
of notice.

 The trial court did not err in finding that Watson received adequate notice, understood
the tax deadline, and defaulted on his obligation to timely pay the taxes. We overrule Watson's
fourth issue on appeal.


Did Ferretti Breach the Contract?

 In Watson's first issue, he contends that Ferretti breached the real estate contract by
conveying less property than the real estate contract contemplated and, thus, Watson was excused
from any duty imposed under the promissory note and deed of trust.

 The essential elements of breach of contract are a valid contract, performance by the
plaintiff, breach by the defendant, and resulting damages incurred by the plaintiff. Scott v. Sebree,
986 S.W.2d 364, 372 (Tex. App.--Austin 1999, pet. denied). Here, assuming Ferretti breached the
contract, Watson has not proved that he performed under the contract, nor has he presented evidence
of injury he suffered as a result of Ferretti's breach or explained what damages he has sustained. See
id. at 373. Indeed, Watson does not seem to urge that he was entitled to damages for breach of
contract, although he does seek attorney's fees. Instead, he urges that Ferretti's alleged breach
excused Watson's later breach and asserts that he did not treat the contract as continuing.

 As stated by the supreme court in Dobbins v. Redden, a case relied on by Watson, "It
is a well established rule that 'a party to a contract who is himself in default cannot maintain a suit
for its breach.'" 785 S.W.2d 377, 378 (Tex. 1990) (quoting Gulf Pipe Line Co. v. Nearen, 138
S.W.2d 1065, 1068 (Tex. 1940)). It was Watson who sued, asserting breach of contract after he
himself defaulted on his contractual duties. We believe the rule quoted above applies to Watson as
much as it does to Ferretti. After closing, when the alleged "breach" occurred, Watson and Ferretti
both performed under the contract as if it were continuing and Watson collected rent and exercised
control over the property. Watson's breach was in his conscious decision not to pay the taxes despite
a contractual obligation to do so. Ferretti's "breach" was in the nature of a mutual mistake and was
not discovered by the parties until after Watson's default.

 Parties to a mutual mistake may be relieved of their contractual responsibilities. See
A.L.G. Enters. v. Huffman, 660 S.W.2d 603, 606 (Tex. App.--Corpus Christi 1983), aff'd as
modified, 672 S.W.2d 230 (Tex. 1984). However, once the error was discovered, Watson never
sought to avoid the contract and instead sued to regain control over the properties. The evidence and
Watson's pleadings demonstrate that he wanted the contract to be reformed and continue as
reformed. See Wallerstein v. Spirt, 8 S.W.3d 774, 781 (Tex. App.--Austin 1999, no pet.)
(reformation is available to correct mutual mistake). Thus, even assuming that the title company's
mistake, of which neither party was aware, could be interpreted as a breach by Ferretti, Watson's
later default was not excused by Ferretti's undiscovered earlier breach. Hanks v. GAB Bus. Servs.,
Inc., 644 S.W.2d 707, 708 (Tex. 1982) ("A party who elects to treat a contract as continuing deprives
himself of any excuse for ceasing performance on his own part. . . . At all times during the dispute
and subsequent litigation, GAB chose to treat the contract as continuing. . . . Moreover, GAB did
not pursue its excuse remedy until it had already instituted action to enforce the contract, well over
a year after Hanks' breach of the covenant not to compete.").

 As Watson points out, mutual mistake is not a defense to a breach of contract claim
but rather is an equitable ground for rescission. Great Am. Ins. Co. v. North Austin Mun. Util. Dist.
No. 1, 902 S.W.2d 488, 500 (Tex. App.--Austin 1993), rev'd in part on other grounds, 908 S.W.2d
415 (Tex. 1995). Under these facts, the trial court did not err in agreeing that Ferretti was a party
to a mutual mistake and in concluding that the mistake did not amount to a breach of contract on
Ferretti's part that would excuse Watson's failure to meet his contractual obligations.


Did the Error Amount to Statutory Fraud?

 In his second issue, Watson asserts that Ferretti committed statutory fraud and that
Watson was thus excused from the agreement. Although Watson agrees that the omission in the
legal description was a mutual mistake and the result of the title company's error, he argues that
Ferretti committed statutory fraud by misrepresenting the property conveyed through the real estate
contract, an aerial photograph of the property, and a list of tenants, which induced Watson to go
through with the real estate contract and buy the property. Watson asserts that he was damaged by
this misconveyance, but does not elaborate on what those damages were. In lieu of damages, Watson
argues he was entitled to specific performance. 

 In a real estate transaction, a person commits statutory fraud if (1) he makes a false
representation of a past or existing material fact, (2) to a person for the purpose of inducing that
person to enter into the contract, and (3) the person relies on the misrepresentation in entering into
the contract. Tex. Bus. & Com. Code Ann. § 27.01(a)(1) (West 2002). If the alleged fraud is an
unfulfilled promise to do something in the future, the false promise must be made with an intention
not to fulfill it. Id. § 27.01(a)(2); National Resort Communities, Inc. v. Holleman, 594 S.W.2d 195,
196 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). 

 Watson is correct that intent is not usually a necessary element in a statutory fraud
suit. See Fletcher v. Edwards, 26 S.W.3d 66, 77 (Tex. App.--Waco 2000, pet. denied) (knowledge
of falsity of representation is not necessary in statutory fraud action). However, the parties agree that
the error in this case was a mutual mistake, and therefore any claim for statutory fraud must fail. See
Denman v. Stuart, 176 S.W.2d 730, 732 (Tex. 1944) ("mutual mistake precludes the existence of"
statutory fraud, citing section 27.01's predecessor statute); Speer v. Pool, 210 S.W.2d 423, 427 (Tex.
Civ. App.--El Paso 1947, no writ); Moss-Tate Inv. Co. v. Owens, 22 S.W.2d 1096, 1097 (Tex. Civ.
App.--Dallas 1929, writ ref'd). Further, although Watson attempts to frame as fraud Ferretti's use
of the real estate contract and illustrative exhibits to induce Watson into completing the transaction,
this would imply that Ferretti induced Watson into going through with the closing by promising
through the contract to convey all of the contemplated property in the future at closing. Watson does
not argue, much less show, that Ferretti made that representation with the intention of not conveying
all of the property. See Tex. Bus. & Com. Code Ann. § 27.01(a)(2); Holleman, 594 S.W.2d at 196.

 The trial court did not err in finding that Ferretti did not commit statutory fraud. We
overrule Watson's second issue on appeal.


Did the Error Excuse Any Default or Invalidate the Contract?

 In his third issue, Watson contends that the promissory note and deed of trust were
the result of a mistake and invalid. Watson urges that the promissory note and deed of trust were
invalid because they were the result of a mutual mistake. He argues that the trial court should have
applied the rule that a contract may be avoided if the parties made a mutual mistake. See Great Am.
Ins. Co., 902 S.W.2d at 499-500. However, after the error came to light, Watson never asked Ferretti
to rescind the contract. Instead, he demanded a reformed deed and attempted to negotiate the
reformation and continuance of the contract. In his pleadings, Watson pleaded mutual mistake but
never argued that the contract was invalid or void and never sought rescission. Instead, Watson
argued that if Ferretti were allowed to foreclose upon the property, Watson would "lose the benefit
of [his] bargain," and requested reformation of the documents. 

 Watson may not seek and be granted equitable relief in the form of reformation and
also seek to avoid the contract and its responsibilities. Watson could have sought to invalidate the
contract, but instead he opted for reformation. By that choice, Watson elected reformation as a
remedy instead of rescission. (2) See Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 848, 851 (Tex.
1980) (election-of-remedies doctrine applies if party exercises informed choice between inconsistent
remedies, rights, or states of facts). We overrule Watson's third issue on appeal.


Was Ferretti Entitled to Accelerate the Note?

 In his fifth issue, Watson argues that Ferretti had no right to accelerate the debt
because Ferretti did not give Watson notice of an intent to accelerate the note. Watson further argues
that the waiver clause contained in the real estate note is ambiguous and therefore should not be
relied upon to permit acceleration absent notice.

 Acceleration of a debt is a harsh remedy that will be enforced only if the
circumstances warrant it. American Bank of Waco v. Waco Airmotive, Inc., 818 S.W.2d 163, 172
(Tex. App.--Waco 1991, writ denied) (quoting Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1376
(9th Cir. 1979)). Once a creditor provides proper notice that a debt has been accelerated, a debtor
no longer has the right to cure his default. Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232, 234
(Tex. 1982). Generally, a creditor may not accelerate a loan before first demanding cure of the
default and giving notice of an intent to accelerate. Id. at 233; see Shumway v. Horizon Credit Corp.,
801 S.W.2d 890, 892 (Tex. 1991). However, a debtor may expressly waive his right to notice of an
intent to accelerate. Shumway, 801 S.W.2d at 892-93; Phillips v. Allums, 882 S.W.2d 71, 73-74
(Tex. App.--Houston [14th Dist.] 1994, writ denied).

 The lien note included a provision waiving Watson's right to notice of an intent to
accelerate, but Watson argues the waiver was vague and unenforceable. The note provided: 


If Maker [Watson] defaults in the payment of this note or in the performance of any
obligation in any instrument securing or collateral to it, and the default continues
after Payee [Ferretti] gives Maker notice of the default and the time within which it
must be cured, as may be required by law or by written agreement, then Payee may
declare the unpaid principal balance and earned interest on this note immediately due. 
Maker and each surety, endorser, and guarantor waive all demands for payment,
presentations for payment, notices of intention to accelerate maturity, [and] notices
of acceleration of maturity, . . . to the extent permitted by law.



(Emphasis added.) Watson asserts that the waiver sentence is ambiguous when read in conjunction
with the preceding sentence, which requires notice of default and a time to cure as required by law
or other agreement. He argues that the provision as a whole may be read as requiring Ferretti to
provide all notices "required by law, general waiver notwithstanding," and that therefore the
provision cannot be read as a clear and unambiguous waiver of Watson's right to receive notice of
an intent to accelerate. We disagree. 

 The right to receive notice of default and time to cure is separate from the right to
receive notice of an intent to accelerate. See Shumway, 801 S.W.2d at 893-94 (waiver provision
must state specifically and separately which rights are waived). The clause "as may be required by
law or written agreement" clearly refers only to Watson's right to receive notice of default and time
to cure, meaning that Ferretti was to notify Watson of a default and how long he had to cure the
default. Ferretti complied with those requirements on February 6, when he sent Watson notice of
his failure to pay the taxes and told him he had ten days to cure. In the following sentence, Watson
agreed to waive his right to receive notice of Ferretti's intent to accelerate if Watson failed to cure
his default upon receiving notice. 

 The real estate lien note provides that, in the event of default, Watson "waive[d] all
demands for payment, presentations for payment, notices of intention to accelerate maturity, notices
of acceleration, protests, and notices of protest." That provision is a specific and unambiguous
waiver of Watson's right to receive notice of Ferretti's intent to accelerate, and such waivers are
valid and enforceable. See id. Ferretti provided Watson with notice of his default, what he had to
do to cure the default, and a deadline to cure. See Hunt v. Jefferson Sav. & Loan Ass'n, 756 S.W.2d
762, 764 (Tex. App.--Dallas 1988, writ denied). Under the lien note, Ferretti was not required to
give notice of his intent to accelerate the note. Ferretti thus complied with the requirements of the
deed of trust and other contractual documents. The trial court did not err in finding that Watson
waived his right to notice of Ferretti's intent to accelerate. We overrule Watson's fifth issue.

 Throughout his arguments, Watson asserts that Ferretti should not be allowed to rely
on the mutual mistake as a defense because Ferretti held the reformed deed "hostage" and refused
to provide corrected documents unless Watson agreed to forego his rights to seek injunctive relief. 
However, any conditioned offers by Ferretti occurred after the mistake was discovered while
Watson's lawsuit, filed March 27, was pending and after Watson's default and Ferretti's decision
to accelerate the note. Once Watson failed to cure his default within ten days and Ferretti decided
to accelerate, Watson lost any right to cure his default later, see Ogden, 640 S.W.2d at 234, and
Ferretti's holding the reformed deed "hostage" was of no real effect. In other words, after
acceleration, Watson had no right to insist that he be allowed to repay Ferretti and continue the
contract under the reformed deed. Therefore, any reluctance to provide a corrected deed has no
bearing on whether Ferretti committed fraud at the inception of the contract or breached the contract.


Is Watson Entitled to Equitable Relief?

 In his sixth and final issue, Watson argues that the trial court abused its discretion in
denying Watson equitable relief.

 Equity may protect a debtor from acceleration if the default is the result of accident,
mistake, or the creditor's inequitable conduct. See American Bank of Waco, 818 S.W.2d at 172
(quoting Brown, 603 F.2d at 1376); Davis v. Pletcher, 727 S.W.2d 29, 35-36 (Tex. App.--San
Antonio 1987, writ ref'd n.r.e.). Here, the tax-related default was not the result of mistake, accident,
or any inequitable conduct on Ferretti's part. Watson assumed he could pay the taxes late, relying
on his past experience with other properties. However, he acknowledged that he knew the taxes
were not paid on time. The fact that the taxing authority allowed a grace period of several months
does not mean that the taxes were not delinquent as of February 1. 

 The evidence shows that Watson offered to reimburse Ferretti for the taxes and other
costs paid by Ferretti and that neither party received the fourth tax notice. Watson also stated that
if Ferretti had said that he intended to pay the taxes and accelerate the note, Watson would have
taken steps to avoid any default. The title error, the missing tax notice, and Watson's offers might
cast doubt on whether the harsh remedy of acceleration was appropriate in this case. However,
Watson received notice that the taxes were due, admitted receiving three of the four notices, and
twice received notice from Ferretti that he was required to provide proof of the tax payments. 
Watson not only failed to pay any of the taxes by the January 31 due date, he failed to pay them by
February 21 and never communicated with Ferretti about his financial situation or that he was
planning to pay the taxes late. (3)
 Watson received notice of his default and failed to cure it within ten
days. Once Ferretti sent Watson notice that the debt had been accelerated, Watson lost any further
right to cure his default. See Ogden, 640 S.W.2d at 234. We cannot hold that the trial court erred
in concluding that Watson was not entitled to equitable relief from acceleration after ignoring
Ferretti's notices related to taxes and sitting quietly for nearly a month after the due date. We
overrule Watson's sixth issue.


Conclusion


 Having overruled all of Watson's issues on appeal, we affirm the trial court's
judgment.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear: Opinion by Justice Puryear;

 Dissenting Opinion by Justice Patterson


Affirmed

Filed: June 23, 2005

1. A mutual mistake is established when the evidence shows that both parties were acting
under the same misunderstanding of the same material fact. Lacy v. Ticor Title Ins. Co., 794 S.W.2d
781, 784 (Tex. App.--Dallas 1990, writ denied). 
2. Watson cites Hampton v. Minton, 785 S.W.2d 854 (Tex. App.--Austin 1990, writ denied),
to support his arguments that his default was excused by Ferretti's earlier breach and that his seeking
reformation should not bar him from asserting his other defenses. In Hampton, the buyer argued that
his default did not excuse the seller's failure to make payments to the prior owner, resulting in that
party's foreclosure on the property. Id. at 857. The court held that the seller's obligation to perform
was excused by the buyer's prior breach. Id. at 857-58. The buyer then argued that the seller waived
her excuse by seeking specific performance, not rescission. Id. at 858. The court held that the seller
had not conclusively indicated an intention to keep the contract alive. Id. 
3. Watson believes Ferretti only sought to accelerate the note because Watson raised the rent
on the property against Ferretti's wishes. Whatever Ferretti's motives, he was within his contractual
rights to accelerate the note.