**J.H. LACY, Trustee, Appellant,**

v.

**TICOR TITLE INSURANCE COMPANY and Sullivan Investments, Inc., Appellees.**

No. 05–89–00976–CV.

Court of Appeals of Texas, Dallas.

June 15, 1990.

Rehearing Denied Sept. 6, 1990.

Kevin J. Keith, Bailey & Williams, Dallas, for appellant.

Harold F. Marshall, John W. Bickel, II, and David Mace Roberts, Bickel & Brewer, Dallas; and H. Dee Johnson, Jr., Lewisville, for appellees.

Before ENOCH, C.J., and T.C. CHADICK [1] and GERALD T. BISSETT [2], JJ. (Retired Sitting by Assignment).

## OPINION

ENOCH, Chief Justice.

Appellant, J.H. Lacy, trustee for several joint venturers, brought suit against appellees, Sullivan Investments, Inc. (Sullivan), and Ticor Title Insurance Co. (Ticor), for breach of contract and breach of fiduciary duty, respectively. For the reasons discussed below, we reverse and render.

## BACKGROUND

In September 1984, Lacy contracted with Sullivan to sell a tract of undeveloped land. The property consisted of approximately eleven acres near the intersection of Luna Road and Interstate Highway 635 in Dallas County, Texas. The contract of sale provided that Sullivan could undertake a feasibility study of the realty, and if Sullivan determined that the realty was not suitable for its purposes, Sullivan had the unilateral right to cancel the contract of sale by providing written notice of cancellation to the "Seller and Title Company" by the approval date as defined in the contract, "but in any case, no later than November 30, 1984." Sullivan initially tendered $200,000 to Ticor in the form of a check to be held subject to the terms of the contract of sale as earnest money. Thereafter, the parties substituted an irrevocable standby letter of credit for the check. The letter of credit was also in the amount of $200,000. Subsequently, the parties extended the expiration date of the letter of credit from December 15, 1984, to January 2, 1985.

By letter dated November 28, 1984, Sullivan attempted to cancel the contract of sale. The letter, however, was not addressed to either Lacy or Ticor but to Wayne Pickering at Davidson Real Estate, the named broker in the contract. In addition, the letter was not mailed, but delivered. There is nothing in the record showing the date of its delivery or receipt. The record does show that Pickering discovered the letter in his office on December 5, 1984, five days after expiration of the approval date. On the same day, he delivered the cancellation letter to Lacy through an employee. Ticor received a copy of this cancellation letter on December 6, 1984.

Lacy informed Ticor, by letter dated December 26, 1984, that Sullivan defaulted under the contract by failing to give Lacy timely written notice of cancellation. Lacy instructed Ticor to draw down on the letter of credit. This Ticor failed to do. The letter of credit expired by its own terms on January 2, 1985. Ticor claims that Sullivan instructed Ticor not to present the letter of credit for payment. Ticor, therefore, informed Lacy's attorney, by letter dated January 29, 1985, that because it had received conflicting demands as to whether to negotiate the letter of credit and since it

1. The Honorable T.C. Chadick, Justice, Retired, Supreme Court of Texas, sitting by assignment.

2. The Honorable Gerald T. Bissett, Justice, Retired, Court of Appeals, Thirteenth District of Texas at Corpus Christi, sitting by assignment.

had no authority to determine which demand should prevail, "[o]nly upon being advised by *all* the parties of the disposition to be made of the letter of credit are we (Ticor) authorized to take any action in connection therewith."

On Lacy's claim for breach of contract, the jury found that: (1) Davidson Real Estate was not an authorized agent of Lacy to receive communications concerning performance under the contract; and (2) Sullivan failed to give Lacy written notice of cancellation of the contract within a reasonable time of November 30, 1984. However, the jury also found that the parties entered into the contract based upon mutual mistake, and, as a result, the trial court entered judgment in favor of Sullivan on the breach of contract claim and in favor of Ticor on the issue of breach of fiduciary duty.

## MUTUAL MISTAKE

■ In points of error one and two, Lacy alleges that the trial court erred in entering judgment against him because there was no evidence and insufficient evidence to support the jury finding of a material mutual mistake of fact in the formation of the contract. To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *A.L.G. Enterprises v. Huffman*, 660 S.W.2d 603, 606 (Tex.App.—Corpus Christi 1983), *affirmed as modified*, 672 S.W.2d 230 (Tex. 1984); *Newson v. Starkey*, 541 S.W.2d 468, 472 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.).

■ We state the principles we must follow in determining no evidence and insufficient evidence. In reviewing legal sufficiency, we must consider only the evidence and reasonable inferences therefrom, which, when viewed in their most favorable light, support the findings. The court must disregard all evidence and inferences to the contrary of the fact finding. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support

the finding, the challenge fails. *Stafford*, 726 S.W.2d at 16. When reviewing a factual sufficiency point, we consider all of the evidence that is in the record and relevant to the fact being challenged. We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Applying these principles, we must first determine if there is evidence of probative value to support the trial court's judgment. If a no evidence point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for appellant, unless the interest of justice requires another trial. *United States Fire Ins. Co. v. Carter*, 473 S.W.2d 2, 3 (Tex.1971); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Therefore, when both "no evidence" and "insufficient evidence" points of error are raised, the court should rule on the "no evidence" point first. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981).

■ At trial, Sullivan testified that at the time of the formation of the contract, both parties believed that *only the "neck"* of the tract of land in question, which extended from the northern part of the property, was within the United States Government 100–year flood plain designation. In mid-October 1984, during the pendency of the contract, Sullivan reviewed the survey of the property. It is this survey, dated October 19, 1978, recertified on September 13, 1984, revised on October 3, 1984 and again on October 10, 1984, which Sullivan claims shows that the *entire tract* of land was within the 100–year flood plain designation, thereby proving a mutual mistake of fact in the formation of the contract. However, the undisputed evidence also is that Sullivan knew there was a flood plain restriction. Further, it is undisputed that Sullivan had the unilateral right to cancel the contract of sale after it had the opportunity to review the survey of the realty to determine, among other things, the extent of the flood plain. Finally, it is undisputed that Sullivan and Lacy modified

the contract of sale to extend the schedule for closing after Sullivan had obtained the very survey he claims demonstrates his mistaken belief about the flood plain. In short, the contract that Sullivan executed ensured that he could cancel if he later learned that the property could not be developed as he intended (the extent of the flood plain being one of the considerations). Whatever the parties understood about the flood plain at the formation of the contract, there is no evidence that rises to the level of a mistake justifying cancelling the contract. *See Johnson v. Smith,* 697 S.W.2d 625, 630 (Tex.App.–Houston [14th Dist.] 1985, no writ). Point of error one is sustained; therefore, we do not reach point of error two, nor do we reach point of error three.[3]

## BREACH OF FIDUCIARY DUTY

### The Letter Of Credit

■ In point of error four, Lacy contends that it established, as a matter of law on the undisputed evidence, that Ticor breached its fiduciary duty to Lacy. To address this point, we must review the law regarding letters of credit. The letter of credit is an instrument that obliges the issuer to pay money to the beneficiary upon proper presentment under the letter. *Westwind Exploration, Inc. v. Homestate Savings Ass'n,* 696 S.W.2d 378, 380–81 (Tex.1985). The essential purpose of the letter of credit is to insure payment to the beneficiary. *GATX Leasing Corp. v. DBM Drilling Corp.,* 657 S.W.2d 178, 181 (Tex. App.—San Antonio 1983, no writ). The letter of credit situation involves three functionally related, but legally separate contracts: the underlying contract between the customer and beneficiary, the contract between the issuer and the customer arranging the credit, and the executory letter of credit contract between the issuer and the beneficiary. *Westwind,* 696 S.W.2d at 381; *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 464–65 (2d Cir.1970).

■ In defense, Ticor argues that the language of Paragraph 6D in the Contract of Sale defined its duties under the letter of credit.[4] Lacy, however, correctly points

---

**3.** In point of error three, Lacy cites us to our unpublished opinion in an earlier appeal of this case. *Lacy v. Ticor Title Ins. Co.,* No. 05–87–00410–CV (Tex.App.—Dallas, March 28, 1988, no writ). Lacy then invokes the doctrine of "law of the case" to support his allegation that the trial court erred in entering judgment against him because, as a matter of law, there was no material mutual mistake of fact in the formation of the contract. *Trevino v. Turcotte,* 564 S.W.2d 682, 685 (Tex.1978).

In the previous proceeding before this court, Lacy appealed from the trial court's granting of Sullivan's and Ticor's motions for summary judgment. In reviewing the summary judgment record, one of the issues upon which the judgment could have been based was that Sullivan had established, as a matter of law, that there was a mutual mistake of fact in the formation of the contract. In short, the issue presented in that appeal is the converse of the issue in this appeal. It is a principle of logic that for any stated true proposition, the converse is not necessarily true. Sullivan's failure to establish a mutual mistake in the formation of the contract, as a matter of law, does not necessarily mean that Lacy established a mutual mistake did not occur, as a matter of law. Because we find no evidence in support of Sullivan's claim of mutual mistake, we do not reach Lacy's third point of error.

**4.** Paragraph 6D is set out below:

Purchaser shall have a feasibility period ending October 30, 1984 ... of which the last day shall be referred to as the "Approval Date", during which time to conduct the studies called for in Paragraph A above. This Contract is subject to Purchaser finding from such studies that the Property is suitable for Purchaser's intended use, and should the property not prove satisfactory for Purchaser's intended use, in Purchaser's sole discretion, this Contract can be cancelled at Purchaser's option by written notification to Seller and Title Company in which case it shall become null and void, all parties shall have no further liability one to the other, and the Earnest Money shall be returned to Purchaser without further notice of any kind to or by any party and Title Company shall be entitled to rely solely upon such written notice without any further inquiry or notice of any kind by, to, or from any party.

Paragraph 6D was later amended and reads in pertinent part:

Paragraph 6D is hereby amended to extend the feasibility period ending October 30, 1984, to five (5) business days after disposition of Seller's zoning change request to the City of Farmer's Branch, Texas, but in any case, no later than November 30, 1984.

In all other respects the Contract shall remain in full force and effect.

out that Ticor was not a party to that contract. The record reflects that Ticor was not a party to either the contract of sale between Lacy and Sullivan or to the contract amendments. We also note that the record is devoid of any escrow agreement or separate and distinct contract among Ticor, Lacy, and Sullivan defining Ticor's obligations under the letter of credit.[5] In the escrow situation, it is most important to include a carefully drawn list of instructions that defines the duties of the escrow agents. These instructions should be signed by the purchaser, the seller, and the escrowee. Walker & Eshee, *The Safeguards and Dilemmas of Escrows*, 16 REAL ESTATE L.J. 45, 48 (1987). Ticor failed to execute such an agreement with the parties, although it participated in the letter of credit transaction.

It is significant that the device chosen by the parties to be the basis of their relationship was the letter of credit because the letter results in the creation of a relationship independent of the underlying transaction between the issuer of the credit and its customer, or between the customer and the beneficiary of the credit. A court may not resort to underlying agreements between customers and beneficiaries in interpreting a letter of credit. *See Summit Ins. Co. v. Central Nat'l Bank*, 624 S.W.2d 222, 226 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Letters of credit are governed by Chapter 5 of the Uniform Commercial Code. TEX.BUS. & COM.CODE ANN. § 5.102 (Vernon 1968). Section 5.114 of the Code emphasizes the established rule of law that the letter of credit is entirely independent of the underlying contract giving rise to the transaction. The two contracts cannot be construed together for the purpose of adding obligations in addition to those specifically set out in the letter of credit. *Summit*, 624 S.W.2d at 225. We must therefore look solely to the letter of credit to ascertain the intent of the parties with respect to Ticor's fiduciary duties under the letter of credit.

### Applicable Rules in Construing Contracts/Letters of Credit

█ Letters of credit are governed by the construction rules of ordinary contracts. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 115 (Tex. 1978). Generally, the meaning to be given the language used in a written instrument is a question of law. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Vanguard Ins. Co. v. Stewart*, 593 S.W.2d 736, 739 (Tex.Civ.App. —Houston [1st Dist.] 1979), *aff'd*, 603 S.W.2d 761 (Tex.1980). The cardinal rule to be observed in the construction of contracts is to ascertain and give effect, whenever possible, to the intention of the parties, as that intention is revealed by the language used in the agreement. *Birdwell v. Ferrell*, 746 S.W.2d 338, 339–40 (Tex. App.—Austin 1988, no writ). The intent of the parties is to be ascertained from the entire instrument, harmonizing and giving effect to all provisions of the contract so that none will be rendered meaningless. *Gibson v. Bentley*, 605 S.W.2d 337, 339 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). We also recognize that the parties to an instrument intend every

5. Concerning the conditions of payment under the credit, the parties should include in the earnest money contract a *specific* description of any documents required to accompany drafts or demands for payment. This portion of the contract is often intensely negotiated because the earnest money secures the purchaser's obligation to close the transaction. The seller and the beneficiary may desire to provide that the beneficiary may draw on the credit by merely submitting a signed statement from the seller reciting that the purchaser is in default under the terms of the contract. The purchaser and the issuer, however, may wish to require the beneficiary to furnish a *sworn* statement concerning the purchaser's default. This requirement would obligate the beneficiary to ascertain whether an actual default had occurred and might subject it to liability for any loss associated with improper payment by the issuer. If the beneficiary is a title company, it will generally refuse to accept a credit requiring it to submit a statement regarding a purchaser's default or obligating it to make any other determination which may be disputed by the seller or purchaser.
Mueller, *Letter of Credit: A New Tool of Trade for the Real Estate Attorney*, 38 BAYLOR L.REV. 109, 143 (1986).

clause to have some effect and in some measure to evidence their agreement. *City of Pinehurst*, 432 S.W.2d at 518. Moreover, the language used by the parties in a contract should be accorded its plain, grammatical meaning unless it appears that the intention of the parties would be defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985). If two constructions are possible, a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless. *Republic*, 578 S.W.2d at 115. With these rules in mind we now turn to the letter of credit.

The letter of credit, set out below in pertinent part, was issued by Mercantile Bank and expressly named Ticor as the beneficiary:

> IRREVOCABLE STANDBY LETTER OF CREDIT NO. 222
> BENEFICIARY:
> TICOR TITLE INSURANCE, FOR THE BENEFIT OF: J.H. LACY, TRUSTEE
> 505 TEXAS DRIVE, SUITE 109
> IRVING, TEXAS 76102

The letter of credit imposed the following conditions for payment:

> 1. THIS ORIGINAL LETTER OF CREDIT, AND
> 2. SIGNED STATEMENT FROM J.H. LACY THAT SULLIVAN INVEST-MENTS, INC. IS IN DEFAULT UNDER THE TERMS OF THAT CERTAIN CONTRACT OF SALE DATED AUG. 3, 1984, AS AMENDED SEPT. 14, 1984, BY AND BETWEEN J.H. LACY, TRUSTEE AND SULLIVAN INVESTMENTS, INC., TRUSTEE.

Lacy advised Ticor, in a letter dated December 21, 1984, that Sullivan defaulted under the contract of sale.[6] Lacy instructed Ticor to present a sight draft to the bank issuing the letter of credit and to draw down the $200,000. Ticor refused to comply with Lacy's instructions and the letter of credit expired on its own terms on January 2, 1985.

▮▮▮ Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Ticor's assumed role as named "beneficiary" under the letter of credit "for the benefit of Lacy" is an important factor in our determination as to whether Ticor owed Lacy fiduciary duties. It is established in this State that business dealings can and often do create a relationship between the parties that will impose duties and obligations on one to the other in the nature of fiduciary duties and obligations. *MacDonald v. Follett*, 142 Tex.

---

6. The relevant provisions from Lacy's December 21 letter read:

> Earnest Money in the form of a Two Hundred Thousand Dollar ($200,000.00) Letter of Credit was placed in escrow with your office. The purpose of this letter is to formally advise you that Sullivan Investments, Inc. has defaulted under the Contract by failure to timely notify our client within the stated feasibility period, as extended by amendment to the Contract, that it has chosen to exercise its option to cancel the Contract. Such notice is required by Paragraph 6D of the Contract, as amended, to have been delivered to my client no later than November 30, 1984. No such notice was received.
>
> It is our understanding that the Letter of Credit expires on January 10 [sic], 1985. Therefore, you are instructed to (i) immediately present a sight draft to the bank issuing such Letter, (ii) draw down the Two Hundred Thousand Dollars ($200,000.00), and (iii) issue your check in such amount to J.H. Lacy,

Trustee. Failure to do so could obviously create substantial legal difficulties for Ticor Title Insurance.

This letter was signed by Lacy's attorney, and not by Lacy as required under the letter of credit. Proper presentment of a letter of credit occurs where the beneficiary strictly complies with the terms of the letter. *Delta Brands, Inc. v. M Bank Dallas*, 719 S.W.2d 355, 359 (Tex.App.—Dallas 1986 writ ref'd n.r.e.). However, if Ticor had timely acted upon Lacy's instruction to present the documents, Lacy would have had notice and opportunity to remedy the defect, as the letter of credit did not expire until January 2, 1985. *See Breathless Assocs. v. First Savings & Loan Ass'n*, 654 F.Supp. 832, 838 (N.D.Tex. 1986). Moreover, it is apparent from Ticor's January 29, 1985, letter to Lacy that its refusal to present the draft was not premised on the absence of the proper documents, but rather on the conflicting demands it received from Lacy and Sullivan.

616, 621–22, 180 S.W.2d 334, 337–38 (1944). "Fiduciary relation" applies to legal relations between parties, created by law or by nature of contract between parties, where equity implies confidence and reliance in consummation of purposes for which the relation was created. *Peckham v. Johnson*, 98 S.W.2d 408, 416 (Tex.Civ.App.—Fort Worth 1936), *aff'd*, 132 Tex. 148, 120 S.W.2d 786 (1938). The expression of "fiduciary relation" is one of broad meaning, including both technical fiduciary relations and those informal relations which exist whenever one person trusts and relies upon another. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980); *Peckham*, 98 S.W.2d at 416. In resolving the problem of the existence of a fiduciary relationship, we note that the problem is one of equity, and the circumstances out of which a fiduciary relationship will be said to arise are not subject to hard and fast rules. *Texas Bank & Trust Co.*, 595 S.W.2d at 508.

■■■■ The parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *City of Pinehurst*, 432 S.W.2d at 518. The plain meaning of the language used by the parties in the irrevocable standby letter of credit designates Ticor as the beneficiary "for the benefit of J.H. Lacy, Trustee." The rule of strict conformity applies to letters of credit; if the beneficiary of a letter of credit presents documents which strictly conform to the requirements of the letter of credit, the issuer must honor the draft. *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 795 (Tex.1984); *Delta Brands, Inc.*, 719 S.W.2d at 359. "When either a commercial or standby letter names a beneficiary, only that beneficiary has the right to present the required documents and to get paid under the letter." Givray, *U.C.C. Survey: Letters of Credit*, 44 Bus. Law 1567, 1597 (1989). Since the issuer has the right to turn away any other presenter other than the letter's beneficiary, Ticor alone, as named beneficiary under the letter of credit, had authority to present the requisite documents to the bank for payment under the credit. Even if Lacy had the requisite documents, he lacked authority to draw down the $200,000 since he was not the named beneficiary under the letter of credit. Lacy was entirely dependent upon Ticor to make proper presentment of the requisite documents under the letter of credit. Ticor, therefore, owed Lacy a fiduciary duty of strict compliance under the letter of credit.

■■■■ Once a fiduciary relationship is established, the next issue is to determine whether there has been a breach of the relationship. The letter of credit itself does not require Ticor to undertake actual determinations of fact regarding the underlying obligation prior to presentment. As previously noted, the record is also silent as to any escrow agreement or separate and distinct contract among Ticor, Lacy, and Sullivan defining Ticor's obligations under the letter of credit. If an agreement is fairly capable of a construction that will make it valid and enforceable, that construction will be given it. *Republic*, 578 S.W.2d at 115. We prefer the construction rendering the letter of credit possible of performance to one which renders its performance impossible or meaningless. We hold that the plain meaning of the terms of the letter of credit obligated Ticor, upon instruction from Lacy, to issue a sight draft and attempt to draw down on the letter of credit, regardless of conflicting instructions from Sullivan. Since Ticor refused to honor Lacy's instructions, Ticor, therefore, breached its fiduciary duty to Lacy. Since the letter of credit insuring Lacy's recovery of liquidated damages under the contract in case of default expired on its own terms and as the jury found that Sullivan did not give timely notice of cancellation to Lacy, Lacy is entitled to the sum stated in the letter of credit. Any other construction of the letter of credit would render the performance of the letter of credit meaningless. We sustain Lacy's fourth point of error, and, consequently, do not reach his fifth, sixth, and seventh points of error.

### Proximate Cause

In one cross-point, Ticor alleges that the trial court erred in failing to submit to the

jury the issue of whether Ticor proximately caused any damages to Lacy, and that if the trial court's judgment is reversed, the cause should be remanded for a new trial. Ticor argues that it did not cause any damages to Lacy by failing to draw down on the letter of credit since Lacy is free to collect its liquidated damages from Sullivan.

The parties arranged for a letter of credit to secure the contract of sale. In the event Sullivan breached the contract, the letter of credit ensured that Lacy would receive liquidated damages from Sullivan in the amount of $200,000. Because we have held that there is an absence of evidence rising to the level of a mutual mistake, Lacy is entitled to damages in the amount of $200,000 under the contract. We note that Ticor's fiduciary obligation to Lacy is independent of Sullivan's obligation to Lacy under the contract of sale, in that it arises under the letter of credit. The essential purpose of the letter of credit is to insure payment to the beneficiary. *GATX Leasing*, 657 S.W.2d at 181. Based upon the undisputed evidence, when Ticor breached its fiduciary duties to Lacy by permitting the letter of credit to expire under its own terms, Lacy forfeited the security the parties provided for under the contract in the event of a breach. We hold that Ticor's failure to draw down on the letter of credit resulted in the loss of designated funds to which Lacy is entitled, thereby proximately causing damages to Lacy in an amount of $200,000. Ticor's cross-point is overruled.

## ATTORNEYS' FEES

In his eighth point of error, Lacy alleges that the trial court erred when it refused to grant judgment for Lacy together with an award of reasonable attorneys' fees because Lacy had no duty to supplement, or, in the alternative, demonstrated "good cause" for not having supplemented its answers to Ticor's interrogatories to designate an attorneys' fee expert to testify on its claim against Sullivan. Lacy argues that it had no obligation to designate an attorneys' fee expert with respect to his claim against Sullivan in response to an interrogatory from Ticor, against which he had no attorneys' fee claim. We agree.

It is significant that Lacy's claim against Ticor for breach of fiduciary duty does not include a claim for recovery of attorneys' fees.[7] It is Lacy's claim against Sullivan for breach of contract that does include a request for "reasonable and necessary" attorneys' fees which are provided for by statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). Prior to trial, only Ticor submitted written interrogatories to Lacy which asked for, among other things, the identity of expert witnesses. Sullivan did not propound any interrogatories to Lacy. Lacy answered Ticor's interrogatories, and Ticor has made no complaint that the answers were not complete as to it. In answer to Ticor, Lacy did not designate an attorneys' fee expert witness.

During trial, the parties stipulated that the matter of attorneys' fees would be presented to the trial court and not the jury for determination. The trial judge conducted a brief hearing on this issue during which time Lacy made an offer of proof as to attorneys' fees and the issue of good cause. Based on the testimony of Lacy's attorneys' fee expert, the court found a reasonable attorneys' fee in an amount of $76,904.70. However, the court thereafter sustained the objections made by Sullivan and Ticor, excluding the testimony as inadmissible on the basis that Lacy did not show good cause for failing to designate an expert witness on attorneys' fees in response to Ticor's interrogatories. The court based its ruling on the decision in *Tri-State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 491 (Tex.App.—Houston [14th Dist.] 1989, no writ), which follows the decision in *Smith v. Christley*, 755 S.W.2d 525, 529–30 (Tex.App.—Houston [14th

---

7. Initially, Lacy asserted a claim against Ticor for punitive damages. Ticor argues that because attorneys' fees can be considered in assessing punitive damages, Lacy had a duty to designate his attorneys' fee expert in response to its interrogatory. Lacy, however, withdrew his claim against Ticor for exemplary damages prior to trial, relying solely upon his claim for breach of fiduciary duty. Therefore, Ticor's argument on this point is moot.

Dist.] 1988, writ denied), where the party objecting to proffered testimony of an expert asserted the failure of the proffering party to list the expert in response to an interrogatory which had been propounded by a third party. The court of appeals held that the expert testimony should have been excluded reasoning as follows:

> A party must be able to rely on the interrogatories and answers of other parties in the same suit. Otherwise a multi-party case would require redundant interrogatories with identical questions and answers. Rule 168 already limits the number of interrogatories. Although rule 168(2) limits interrogatories to use *against* the answering party, there is no limit on who may use them.

*Smith,* 755 S.W.2d at 530.

However, in *American Cyanamid Co. v. Frankson,* 732 S.W.2d 648 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.), the court of appeals upheld the trial court's refusal to permit the reliance on one co-defendant's expert designation by another codefendant. In that case, the trial court entered an order that all defendants produce for deposition all experts whom they intended to rely upon at trial. One of the defendants did not specifically designate an expert, but instead relied upon a statement in its designation that it reserved the right to call all experts designated to testify as witnesses by other parties in the case.[8] The trial court refused to allow this defendant to use the experts that a second defendant in the case had designated. The court of appeals affirmed, holding: (1) that "[a]ny 'catch all' phrase which designates any other witnesses which any defendant might designate is not sufficient;" and (2) that no abuse of discretion was shown in the trial court's action. *Frankson,* 732 S.W.2d at 655–56.

Lacy argues that the duty to designate his attorneys' fee expert with respect to his claim against Sullivan never arose because Sullivan failed to ask for this information in a proper discovery request. Therefore, he violated no duty to designate experts or to supplement its designation of experts,

and should have been permitted its offer of proof in order to recover attorneys' fees against Sullivan on its breach of contract action. In the alternative, Lacy argues that since the courts of appeals have different opinions on the issue, and the matter is without authority by our Supreme Court, he has shown good cause for failing to designate an attorneys' fee expert.

We do not consider the above cases to be inconsistent. On the one hand, there is no need to clutter the case file with numerous, duplicitous interrogatories and answers; however, there is a critical need for each party to know, specifically, the experts which their opposition expects to call. Concomitantly, there is an equally compelling reason not to force upon one party irrelevant answers to their interrogatories, just because it is a co-party in the litigation.

The Rules of Civil Procedure require a party to identify an expert witness if asked to do so in a proper discovery request; the rules also create an affirmative duty on a party to supplement this list of experts.

> If a party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed *in response to an appropriate inquiry directly addressed to these matters,* such response must be supplemented to include ... as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

TEX.R.CIV.P. 166b(6)(b) (emphasis added).

> A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence *which the party was under a duty to provide* in response or supplemental response or to offer the testimony of an expert witness or any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the

---

**8.** The second defendant had initially designated three doctors as expert witnesses in the case, but

subsequently withdrew their names as experts and redesignated them as consultants.

evidence and good cause must be shown in the record.

TEX.R.CIV.P. 215(5) (emphasis added).

"Our goal in promulgating rules 166b and 215(5) and our prior opinions interpreting these rules was to encourage full discovery of the issues and facts prior to trial so that parties could make realistic assessments of their respective positions." *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). However, the right to present evidence material to a disputed issue at trial is so important that such rights should not be denied unless it is shown that the proffering party has withheld relevant information that he had a clear duty to produce. *Lloyd A. Fry Roofing Co. v. State*, 524 S.W.2d 313, 320 (Tex.Civ.App.— Dallas 1975, writ ref'd n.r.e.); *Employer's Mut. Liab. Ins. Co. v. Butler*, 511 S.W.2d 323, 326 (Tex.Civ.App.—Texarkana 1974, writ ref'd n.r.e.).

In the instant case, there is nothing in the record to trigger Lacy's duty to Sullivan to designate any expert, since Sullivan failed to submit an appropriate inquiry addressed to this matter. Therefore, Lacy need not predicate production of the witness upon a showing of good cause. Consequently, we hold that this evidence was admissible and that the court erred in excluding it. In so holding, we view this ruling as harmonizing the cases above cited. The essence of our holding is that in multiparty cases where non-common causes of action are pleaded, one party may not necessarily rely upon answers to another party's interrogatories, the distinction being whether the question goes to a common cause of action. We realize this is perhaps not a simple concept to implement. However, in complex litigation where parties are joined because of common facts, but the causes of action are different, discovery would be meaningless if responding parties were required to pour the proverbial kitchen sink into their answers to interrogatories for fear that they failed to include some piece of information that might be remotely relevant to some evidence they might want to introduce against some other party. This doesn't even address the mind-boggling gymnastics the propounding party would have to go through to sort through the "kitchen sink" to determine those parts of the answers that apply to him or her. Lacy's eighth point of error is sustained.

### SULLIVAN'S CROSS–POINT

Sullivan asserts one cross-point of error alleging that the trial court's judgment as to Sullivan is, as a matter of law, not in error because the undisputed evidence at trial showed that no act or breach of contract by Sullivan produced or resulted in any damage to Lacy. Sullivan argues that Lacy's recovery of liquidated damages is limited to the letter of credit; that the letter of credit expired under its own terms as a result of Lacy's own failure to present the necessary documents to the issuing bank to draw down on the $200,000; and that there was no act or omission by Sullivan that produced or caused any recoverable loss to Lacy. Sullivan alleges that it was never required under the contract to place cash in escrow as earnest money, and further reasons that a money judgment ordered against it in this case would require this Court to rewrite the contract between the parties.

■ Parties to a contract may stipulate the amount of damages to be recovered in the event of a breach. *Birdwell v. Ferrell*, 746 S.W.2d 338, 340 (Tex.App.—Austin 1988 no writ). The stipulated sum should represent a reasonable estimate of damages, and the intent that the sum be in lieu of other damages must be evident. *Birdwell*, 746 S.W.2d at 340. Such an agreement will bind the parties and furnish the measure of damages. *Birdwell*, 746 S.W.2d at 340–41. Paragraph 1B of the original contract between Lacy and Sullivan provided:

Earnest Money in the form of a $200,000.00 check shall be placed in escrow with Ticor.... On the Approval Date, the check shall be deposited in an interest bearing account in favor of Purchaser and shall be applied to the Purchase Price at Closing.

Paragraph 1B was later amended by the parties and reads in pertinent part:

Paragraph 1B is hereby amended by allowing the Good Faith Deposit of cash to or irrevocable Letter of Credit in a form and substance acceptable to Seller in the amount of $200,000.00 ("the Good Faith Deposit"), as evidence of Purchaser's good faith in entering into this Agreement. At Closing the Good Faith Deposit, if in the form of a Letter of Credit, shall be returned to Purchaser; otherwise it shall be disposed of as provided elsewhere herein....

In all other respects the Contract shall remain in full force and effect.

Other terms and conditions of the contract relevant to our inquiry are included in the termination paragraph set out below and involve disposition of the earnest money should Sullivan default:

In the event that Purchaser should fail to consummate this Contract for any reason, except Seller's default or the termination of this Contract pursuant to the terms of this Contract, Seller shall have the right to retain the Earnest Money as liquidated damages for the breach of this Contract as Seller's sole remedy.

 Sullivan entered into an agreement with Lacy stipulating to liquidated damages in an amount of $200,000 in the event of breach. The jury found that Sullivan failed to give Lacy timely notice of cancellation as required under the terms of the contract. Sullivan's breach binds it to furnish Lacy the measure of damages provided for in the contract. Sullivan also argues that, having initially secured the obligation to pay $200,000 (which was later substituted by an irrevocable letter of credit), it fully satisfied its obligation to pay the $200,000 to Lacy in the event of a breach of the contract. In *Devco Development Corp. v. Hooker Homes, Inc.,* 518 So.2d 922 (Fla.Dist.Ct.App.1987), *rev. denied,* 525

So.2d 877 (Fla.1988), a $200,000 standby letter of credit was to provide liquidated damages to the beneficiary if the customer should fail to purchase certain realty. The standby letter stood as the sole source of liquidated damages to the beneficiary. The contract provided that "in the event [Hooker Barnes] defaults with respect to its obligations under this Contract, the ... Letter of Credit held by [Devco] on this Contract may be kept by [Devco] as full liquidated damages." The customer used an escrow to forestall the beneficiary's draw under the letter of credit. However, the parties' escrow documents were not truly required for a draw under the letter of credit. When the letter of credit expired without a draw, so did the beneficiary's right to liquidated damages.[9]

Unlike *Devco,* the contract of sale between Lacy and Sullivan expressly provides that "Seller shall have the right to retain the *Earnest Money* as liquidated damages for the breach of this Contract as Seller's sole remedy." (Emphasis added.) The terms of the contract do not restrict Lacy's liquidated damages to the letter of credit, and, therefore, to order a money judgment against Sullivan, in an amount of $200,000, would not require a rewriting of the contract. Sullivan's cross-point is overruled.

In order to prevent Lacy from double recovery under the letter of credit and the contract of sale, we hold that Ticor and Sullivan are jointly and severally liable for the sum of $200,000. We REVERSE the trial court's judgment and RENDER judgment for appellant, J.H. Lacy. *See* Tex.R. App.P. 81(c).

---

**9.** The letter of credit in *Devco* required two documents for presentment: the beneficiary's sight draft and a completed form of customer default certification. Only the standby letter itself was put in escrow. The beneficiary demanded that the escrow agent release the standby letter of credit, believing that the customer's

default triggered liquidated damages. The escrow agent refused to surrender the standby letter when the customer protested such release. The beneficiary made no attempt to present the documents required in the letter of credit still thinking that the standby letter itself was required for presentment.