Opinion issued April 11, 2002











In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00398-CV

____________


ROBERT J. PIRO, EARLE S. LILLY, AND PIRO & LILLY, L.L.P.,
Appellants


V.


FAYEZ SAROFIM, INDEPENDENT EXECUTOR OF THE ESTATE OF
LINDA SAROFIM LOWE, DECEASED, Appellee


and


FAYEZ SAROFIM, INDEPENDENT EXECUTOR OF THE ESTATE OF
LINDA SAROFIM LOWE, DECEASED, Appellant


V.


ROBERT J. PIRO, EARLE S. LILLY, AND PIRO & LILLY, L.L.P.,
Appellees








On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 97-62103






O P I N I O N

 Linda Sarofim Lowe hired Robert J. Piro, Earle S. Lilly, and the firm of Piro
& Lilly, L.L.P. ("the lawyers") to represent her in her divorce from Fayez Sarofim. 
After the conclusion of the divorce proceeding, Lowe sued the lawyers for breach of
fiduciary duty and other causes of action, claiming they charged her excessive fees
for the divorce. Lowe also asked the trial court to forfeit the attorneys' fees.

 The jury found that the lawyers breached their fiduciary duty to Lowe and
awarded her $3,000,000 in actual damages. In the alternative, the trial court forfeited
the attorneys' fees amounting to $3,000,000. The trial court in its judgment stated,
"it is not the intention of the Court that Plaintiff obtain both actual damages and the
equitable remedy of fee forfeiture for Defendants' breaches of fiduciary duty." The
total award to Lowe in the final judgment was $3,000,000 alternatively based on
breach of fiduciary duty or fee forfeiture.

 On appeal, the lawyers bring eight issues. Fayez Sarofim, independent
executor of the estate of Linda Sarofim Lowe, deceased, brings a single point of
error. (1) We affirm.

The Lawyers' Appeal


 In issue one, the lawyers contend the trial court erred in refusing to disregard
the jury's answer to question 1: "Did Earle Lilly and/or Robert Piro comply with his
fiduciary duty to Linda Lowe?" (2) Question 1 was taken from Pattern Jury Charge
104.2. Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern
Jury Charges: Business  Consumer  Employment PJC 104.2 (2000). On
appeal, the lawyers give three reasons the answer should have been disregarded: (1)
Lowe had no tort claim, but only had breach-of-contract and fee-forfeiture claims; (2)
question 1 was not supported by the pleadings; and (3) the existence of fiduciary
duties and breaches thereof are legal questions that should not be submitted to a jury. 
We will only address the last reason because it was the only complaint made to the
trial court with sufficient specificity to make that court aware of the complaint. See
Tex. R. App. P. 33.1(a)(1)(A).

 In their motion to disregard the jury's verdict, the lawyers claim question 1 was
immaterial because it calls for a finding beyond the province of the jury, i.e., it is a
question of law for the court to decide. See Spencer v. Eagle Star Ins. Co. of Am.,
876 S.W.2d 154, 157 (Tex. 1994) (defining immateriality). The lawyers' specific
argument follows:

 Texas law is perfectly clear that the existence of and breaches of
fiduciary duties are legal questions and not fact or jury questions as to
both tortious and Arce varieties. However, any contested facts in an
equitable action must be resolved, and a party is entitled to have that
resolution made by a jury. If an issue is submitted to a jury on the
existence of and breach of fiduciary duty, the answer must be
disregarded by the court because they are questions of law to be
determined by the court.

(Citations omitted). As authority, they cite to four cases--Burrow v. Arce, Taylor v.
GWR Operating Co., Lacy v. Ticor Title Insurance Co., and Fuqua v. Taylor--that
stand for the proposition that undisputed fact issues should not be submitted to the
factfinder. Burrow, 997 S.W.2d 229, 246 (Tex. 1999); Taylor, 820 S.W.2d 908, 911
(Tex. App.--Houston [1st Dist.] 1991, writ denied); Lacy, 794 S.W.2d 781, 787 (Tex.
App.--Dallas 1990, writ ref'd n.r.e.), writ denied per curiam on other grounds, 803
S.W.2d 265 (Tex. 1991); Fuqua, 683 S.W.2d 735, 737-38 (Tex. App.--Dallas 1984,
writ ref'd n.r.e.).

 Question 1, of course, did not ask the jury whether the lawyers owed a duty to
Lowe (which they unquestionably did), but instead asked the jury to resolve fact
questions regarding possible breaches of that duty. In their argument on appeal,
which consists of the above-quoted paragraph, the lawyers do not argue with any
specificity that the facts in this case related to breaches of their fiduciary duty were
uncontested. We decline to conduct a de novo review of the record to see if there
were, in fact, no contested fact issues related to question 1. See Tex. R. App. P.
38.1(h) (appellant's brief must contain clear and concise argument for contentions
made, with appropriate citations to authority and to record).

 We overrule issue one.

 In issue two, the lawyers contend the trial court erred by (1) not excluding
Lowe's expert witnesses on legal ethics (George Edwin Brooks, W. Amon Burton,
Jr., and James M. McCormack), (2) refusing the lawyers' request for a "live
gatekeeper hearing," as opposed to evaluating the proposed experts based on
deposition and affidavit testimony, and (3) allowing the experts to use the Texas
Disciplinary Rules of Professional Conduct in their testimony. The trial objections
on which the lawyers base issue two were their request that the proposed experts be
examined at the hearing and their written motion to exclude the experts' testimony
based on Texas Rule of Evidence 702, Daubert v. Merrell Dow Pharmaceuticals,
Inc., and E.I. DuPont de Nemours & Co. v. Robinson. Daubert, 509 U.S. 579, 113
S. Ct. 2786 (1993); Robinson, 923 S.W.2d 549 (Tex. 1995). (3) Regarding the
testimony of Burton and McCormack, the lawyers contend it violates the Robinson
factors because "[t]heir conclusions have not been tested, been subjected to peer
review, or been generally accepted by the legal community, and all of their
conclusions were carefully crafted for this lawsuit and clearly based on their
subjective interpretation of the Disciplinary Rules or the facts about which they had
no knowledge."

 In deciding if an expert is qualified, trial courts "must ensure that those who
purport to be experts truly have expertise concerning the actual subject about which
they are offering an opinion." Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d
713, 719 (Tex. 1998). The supreme court has explained that Daubert and Rule 702
demand that the district court evaluate the methods, analysis, and principles relied
upon in reaching the opinion. The court should ensure that the opinion comports with
applicable professional standards outside the courtroom and that it will have a reliable
basis in the knowledge and experience of the discipline. Gammill, 972 S.W.2d at
725-26. In Gammill, the court recognized that the Robinson factors may not apply
to certain testimony. Id. at 726. However, there still must be some basis for the
opinion offered to show its reliability, and, ultimately, the trial court must determine
how to assess reliability. Id. at 726.

 There is a fundamental procedural difficulty with the lawyers' appellate
argument. The record references they marshal to demonstrate why the experts do not
meet the Robinson factors are all from testimony that occurred after the hearing on
their motion. Nowhere in the lawyers' appellate brief do they demonstrate they
specifically objected to the experts' testimony as offered to the jury. See Harvey
Brown, Procedural Issues Under Daubert, 36 Hous. L. Rev. 1133, 1146-47 (1999)
(suggesting overruling of Robinson motion does not preserve error). This means the
lawyers have asked us to review the trial court's initial Robinson decision based on
what the experts said later at trial. The lawyers also do not indicate that they reurged
their Robinson objection before the case was submitted to the jury. Thus, we cannot
hold that the trial court abused its discretion at the initial Robinson hearing.

 We recognize the relationship between (1) requiring the lawyers to specifically
object to the expert witnesses' trial testimony and (2) the trial court's decision to base
the Robinson ruling on the experts' deposition and affidavit testimony, rather than
calling the experts to testify at the hearing. The lawyers did not present
authority--either at trial or on appeal--that Robinson requires such a live hearing,
and we are not aware of any. The equivalent federal rule does not expressly require
an evidentiary hearing, and the trial court's decision on how to hold such a hearing
falls within its discretion:

 The trial court must have the same kind of latitude in deciding how to
test an expert's reliability, and to decide whether or when special
briefing or other proceedings are needed to investigate reliability, as it
enjoys when it decides whether or not that expert's relevant testimony
is reliable. Our opinion in Joiner makes clear that a court of appeals is
to apply an abuse-of-discretion standard when it "review[s] a trial
court's decision to admit or exclude expert testimony." That standard
applies as much to the trial court's decisions about how to determine
reliability as to its ultimate conclusion. Otherwise, the trial judge would
lack the discretionary authority needed both to avoid unnecessary
"reliability" proceedings in ordinary cases where the reliability of an
expert's methods is properly taken for granted, and to require
appropriate proceedings in the less usual or more complex cases where
cause for questioning the expert's reliability arises. Indeed, the Rules
seek to avoid "unjustifiable expense and delay" as part of their search
for "truth" and the "jus[t] determin[ation]" of proceedings.


Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152-53, 119 S. Ct. 1167, 1176 (1999)
(citations omitted); see Brown, Hous. L. Rev. at 1149-53.

 Because the Texas Supreme Court permits Robinson objections when the
evidence is offered at trial, it would likely also adopt the federal abuse-of-discretion
review of a trial court's decision whether, when, and how to hold a Robinson hearing. 
In exercising this discretion, however, the trial court should keep in mind the supreme
court's admonition that "[c]ourts should allow a party . . . to present the best available
evidence." Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 720 (Tex. 1997).

 We note that the trial court did place limits on the experts' use of the Texas
Disciplinary Rules of Professional Conduct in their testimony. The lawyers neither
point to anywhere in the record where they objected that the witnesses were testifying
outside of the limits imposed by the trial court, nor do they explain how the specific
testimony violated those limits. See Brown, Hous. L. Rev. at 1145 (discussing effect
of trial court limiting expert's testimony).

 Finally, the lawyers argue that the supreme court in Havner relieved opponents
of expert testimony from the duty to preserve error. 953 S.W.2d at 712. We disagree. 
The supreme court's opinion in Maritime Overseas Corp. v. Ellis reiterates the
necessity of objecting to the evidence before trial or when the evidence is offered. 
971 S.W.2d 402, 409 (Tex. 1998); see also Tex. R. App. P. 33.1(a); Tex. R. Evid.
103(a)(1).

 We overrule issue two.

 In issue three, the lawyers contend the trial court erred in refusing their
instruction limiting the breach-of-fiduciary-duty question to the time period on or
before November 14, 1996, when Lowe paid the lawyers' legal fees in the underlying
divorce proceeding. The lawyers cite general authority concerning charge practice,
but no authority related to the specific fact scenario in this case, i.e., the relevant time
periods in fee disputes.

 Lowe points to evidence in the record which indicates the attorney-client
relationship continued past November 14, 1996. The lawyers respond that Lowe's
pleadings did not allege a breach of fiduciary duty past November 14, 1996, but do
not show that they either specially excepted to Lowe's pleadings in this regard or
objected to evidence offered at trial related to events past that time. Because there
was a fact issue regarding the length of the attorney-client relationship, we cannot say
the trial court abused its discretion in refusing the lawyer's instruction. See Texas
Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990) (abuse-of-discretion
standard governs claims of error in jury charge).

 We overrule issue three.

 In issue four, the lawyers contend the trial court erred in excluding evidence
that Lowe untruthfully testified that she had earned a master's degree. The lawyers
offered the live testimony of Pamela Cay Lollar, registrar of the Mississippi
University for Women, to show that Lowe had never earned a degree from that
institution. The lawyers also offered Lowe's subsequent testimony on cross-examination that she had not earned the degree.

 The lawyers cite to the Austin Court of Appeals' opinion in Poole v. State, thus
inferentially acknowledging this is an impeachment on a collateral matter. Poole, 974
S.W.2d 892, 905-06 (Tex. App.--Austin 1998, pet. ref'd). Generally a witness may
not be impeached regarding a collateral matter, which is a matter not relevant to
proving a material issue in the case. Id. at 905; see also Tex. R. Evid. 608(b)
("Specific instances of the conduct of a witness, for the purpose of attacking or
supporting the witness's credibility, other than conviction of crime as provided in
Rule 609, may not be inquired into on cross-examination of the witness nor proved
by extrinsic evidence."). Whether Lowe had a master's degree was clearly a
collateral matter in this case. The case law, however, recognizes an exception to the
impeachment-on-a-collateral-matter rule when a witness voluntarily gives misleading
testimony, as Lowe did. Id. at 905.

 We agree with the Dallas Court of Appeals that the trial court should be guided
by Texas Rules of Evidence 401, 402, and 403 in deciding the ultimate admissibility
of the collateral matter. See Keene Corp. v. Gardner, 837 S.W.2d 224, 230 (Tex.
App.--Dallas 1992, writ denied); see also 1 Steven Goode et al., Texas Practice:
Guide to the Texas Rules of Evidence: Civil and Criminal § 607.3 (2d ed. 1993
& Supp. 2001). Although Lowe's testimony was untruthful, the trial court could have
applied Rules 401, 402, and 403 either to allow the impeachment by collateral
evidence or not allow the impeachment. This is a matter entrusted to the trial court's
discretion, and as such, we will not disturb it.

 We overrule issue four.

 In issue five, the lawyers contend the trial court erred in making a fee-forfeiture
award based on unauthorized findings of fact. Attorney Piro, however, made the
following request to the trial court:

 Defendant Robert J. Piro understands that the Court is not
required to make findings of fact in a jury case. Defendant Robert J.
Piro does not believe that the Court could base its Arce judgment on
facts other than those found by the jury and/or undisputed facts and that
if the Court did so, it would be error. However, in the event the Court
did base its Arce judgment on facts other than undisputed facts and/or
those facts found by the jury, and without waiving Defendant's
contention that contested fact issues, if any, were to be resolved solely
by the jury, Defendant Robert J. Piro requests the Court to show what
those factual findings were.


 With regard to Conclusions of Law, Defendant Robert J. Piro
suggests to the Court that under the Arce decision by the Supreme Court,
this Court was required to find as a matter of law that a fiduciary duty
existed which was breached by Defendant(s) and that such breach was
clear and serious. Defendant Robert J. Piro requests that the Court make
Conclusions of Law as to each and every act the Court believed resulted
in a clear and serious breach of fiduciary as well as any other
conclusions of law used by the Court so as to provide Defendant Robert
J. Piro with a fair and reasonable opportunity to have this Court's Arce
judgment properly reviewed.

The trial court made findings of fact and conclusions of law after noting that Piro's
request was "confusing and contradictory." Those findings and conclusions are
attached to this opinion as an appendix.

 The lawyers do not point to anywhere in the record where they objected to the
trial court's findings and conclusions. See Tex. R. App. P. 33.1(a)(1) (preservation
of error). Accordingly, we need not decide whether the specific findings and
conclusions improperly exceeded Piro's request, although we note the lawyers do not
provide any specific analysis in their appellate brief.

 We overrule issue five.

 In issue six, the lawyers contend there is no evidence to support the jury's
finding in question 1 that the lawyers did not comply with their fiduciary duty to
Lowe, or, in the alternative, that finding is against the great weight and
preponderance of the evidence. In deciding a no-evidence claim, we consider the
evidence and inferences tending to support a jury's finding. Havner v. E-Z Mart
Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992). We disregard all contrary evidence
and inferences. Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 275-76 (Tex. 1995);
Havner, 825 S.W.2d at 458. Any evidence of probative force supporting a finding
requires us to uphold the jury's verdict. S. States Transp., Inc. v. State, 774 S.W.2d
639, 640 (Tex. 1989). When reviewing a jury verdict to determine the factual
sufficiency of the evidence, we must consider and weigh all the evidence, and should
set aside the judgment only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); see also Pool v. Ford Motor Co., 715 S.W.2d 629, 635-36 (Tex. 1986).

 The record contains evidence from which the jury could, and did find that the
lawyers took advantage of Lowe and breached their fiduciary duty to her, ranging
from the testimony of Lowe's expert witnesses (whose testimony is not challenged
in this issue), to the lawyers' multiple billing and receipt of multiple payments by
Lowe, to Lilly's inappropriate personal relationship with Lowe. We hold there is
enough evidence to support the legal sufficiency of the evidence, and looking at all
the evidence, the jury's verdict is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.

 We overrule issue six.

 In issue seven, the lawyers contend there is no evidence to support the trial
court award of fee forfeiture, or in the alternative, that award is against the great
weight and preponderance of the evidence. The supreme court set forth the test and
procedures for fee forfeiture in Burrow v. Arce:

 [W]hen forfeiture of an attorney's fee is claimed, a trial court must
determine from the parties whether factual disputes exist that must be
decided by a jury before the court can determine whether a clear and
serious violation of duty has occurred, whether forfeiture is appropriate,
and if so, whether all or only part of the attorney's fee should be
forfeited. Such factual disputes may include, without limitation,
whether or when the misconduct complained of occurred, the attorney's
mental state at the time, and the existence or extent of any harm to the
client. If the relevant facts are undisputed, these issues may, of course,
be determined by the court as a matter of law. Once any necessary
factual disputes have been resolved, the court must determine, based on
the factors we have set out, whether the attorney's conduct was a clear
and serious breach of duty to his client and whether any of the attorney's
compensation should be forfeited, and if so, what amount. Most
importantly, in making these determinations the court must consider
whether forfeiture is necessary to satisfy the public's interest in
protecting the attorney-client relationship. The court's decision whether
to forfeit any or all of an attorney's fee is subject to review on appeal as
any other legal issue.

Arce, 997 S.W.2d at 246. The factors the trial court is to consider in applying the
remedy of fee forfeiture to attorneys are: (1) the gravity and timing of the violation;
(2) its wilfulness; (3) its effect on the value of the lawyer's work for the client; (4)
any other threatened or actual harm to the client; (5) the adequacy of other remedies;
and (6) the public interest in maintaining the integrity of attorney-client relationships. 
Id. at 243-44.

 The lawyers in their appellate brief do not marshal the evidence under this
issue in a manner that applies Arce factors to the tests for legal and factual sufficiency
discussed in issue six. Instead, they argue in a conclusory fashion that the evidence
is insufficient. The lawyers do argue that factor 5--the adequacy of other
remedies--should preclude the award of $3,000,000 as a fee forfeiture because the
trial court also awarded in the alternative $3,000,000 as damages for the lawyers'
breach of fiduciary duty to Lowe. This argument has no merit, however, because the
trial court awarded the $3,000,000 only once, based on the independent, alternative
grounds of damages and fee forfeiture.

 Forfeiture of an attorney's fee is an equitable remedy. Arce, 997 S.W.2d at
245. In this case, the trial court submitted the contested fact issues to the jury, and
we have upheld the sufficiency of the jury's verdict in issue six. To the extent the
lawyers' have requested us in issue seven to review the trial court's exercise of its
equity in awarding the fee forfeiture, we uphold the trial court's award.

 We overrule issue seven.

 In issue eight, the lawyers contend no evidence supported the jury's verdict for
$3,000,000 in actual damages for breach of fiduciary duty, or in the alternative, the
verdict is against the great weight and preponderance of the evidence. Because the
trial court's damage award was made in the alternative and we have overruled the
lawyer's challenge to the $3,000,000 fee-forfeiture award, we do not reach this point.

Lowe's Appeal


 In her appeal, Lowe brings a single point of error in which she contends the
trial court erred in not rendering judgment on both the $3,000,000 damage award and
the $3,000,000 fee-forfeiture award. See Tex. R. Civ. P. 301 ("judgment of the court
. . . shall be so framed as to give the party all the relief to which he may be entitled
either in law or equity."). Although we agree the trial court could have rendered
judgment against the lawyers on both awards without creating a double recovery, the
trial court did not err when it declined to render such a judgment.

 Two of the Arce factors the trial court had to consider were the adequacy of
other remedies and the public interest in maintaining the integrity of attorney-client
relationships. Lowe has not demonstrated that the trial court, in considering those
factors, abused its discretion in conditioning the equitable fee-forfeiture award as an
alternative award to the breach-of-fiduciary-duty-damages award.

 We overrule Lowe's sole point of error.

Conclusion


 We affirm the trial court's judgment.



Sherry J. Radack

Justice


Panel consists of Chief Justice Schneider and Justices Taft and Radack.

Do not publish. Tex. R. App. P. 47.4

Appendix


NO. 97-62101



Linda Sarofim Lowe § IN THE DISTRICT COURT OF

 §

 vs. § HARRIS COUNTY, TEXAS

 §

Robert J. Piro, et al. § 295TH JUDICIAL DISTRICT


Finding of Facts and Conclusions of Law


 On this date, the court considered the "Limited Request for Findings of Fact
and Conclusions of Law" filed by Robert J. Piro and finds the request itself to be
confusing and contradictory. While the case was on trial, the defendants initially took
the position that the judge should decide the breach of fiduciary duty question and
that the jury should answer specific factual questions. During the trial, I prepared a
three-page list of questions to ask the jury about the disputed facts that I thought had
a bearing on the breach of fiduciary duty question and handed it out to all the parties. 
After reviewing that list, the defendants changed their mind and agreed to ask the jury
the global breach of fiduciary duty question. That question was submitted to the jury
without objection by the defendants, as to the jury's role in deciding the issue. Now
Mr. Piro is attempting to claim in his "Limited Request" that the jury should have
been asked specific fact questions and is making some sort of argument that it would
be error for me to make an independent review of the evidence or of the facts in
coming to my conclusion that fee forfeiture was appropriate in this case.

 The jury found that both defendants breached their fiduciary duty to Linda
Lowe. The court agrees with that finding. The breaches of fiduciary duty by the
defendants in the case were numerous, serious and clear.

 In the event that the jury finding is insufficient, the court makes the following
findings of fact and conclusions of law.

Findings of Fact:


 The fee agreement and the conduct of the attorneys were not fair and
equitable to Linda Lowe.
 Robert Piro and/or Earle Lilly did not fully and fairly disclose all
important information to Linda Lowe concerning the fee contract prior
to entering into the contract, including the fact that contingent fees in
divorce cases are rarely justified
 The fee contract did not adequately describe the method by which the
contingent fee is to be determined.
 The contingent fee on the River Oaks house, the ranch and the art was
not justified under the circumstances.
 The fee contract was not fair and equitable to Linda Lowe because the
reduction in hourly rates of Piro was illusory, given the high retainer,
and because Lilly was the attorney who handled the majority of the
property issues.
 Because Robert J. Piro would have to be a witness in the litigation, the
firm should not have undertaken Lowe's representation especially on a
contingent fee basis where Piro's credibility as a witness would be
undermined by his financial interest in the outcome. The non-disqualification agreement in the pre nuptial agreement only operates to
prevent the opposing side from disqualifying an attorney. It should
never be used to argue that there was no conflict in taking on the
representation. Incredibly in post trial briefing, Piro claims that he
withdrew as lead counsel because of the problem. This of course
compounds the fee problem-charging both an hourly rate and a
contingent fee when Lilly was doing all of the work.
 The change from an hourly representation to the contingent fee
representation was not in Lowe's best interest. Lowe was not advised
to have separate counsel review the agreement. Lowe and Piro & Lilly
had a long-standing legal representation on an hourly rate basis,
including a previous divorce filing as to Mr. Sarofim, on an hourly basis. 
The second divorce petition was filed and legal representation was
begun before the contingent fee agreement was signed (notwithstanding
the self serving statement in the fee agreement itself.) Although Piro &
Lilly claim that it was Lowe's idea to have a contingent fee, the timing
and preparation of the fee agreement and the letters prepared by Piro and
Lilly do not support that claim.
 Robert J. Piro and Earle Lilly did not make reasonable use of the
confidence that Linda Lowe placed in them.
 Earle Lilly did not maintain solely a professional relationship with Linda
Lowe during this representation. The fact that Lilly and Lowe did not
have sex (disputed by Lowe) is not determinative. Lilly engaged in a
personal romantic relationship with Lowe during the course of the
representation.


 

 Linda Lowe's emotional feelings for Earle Lilly impaired her ability to
agree to the amount of attorney fees.
 This impairment benefited the law firm of Piro & Lilly, L.L.P., and the
individual attorneys.
 Earle Lilly knew or should have known of her impairment.
 Robert Piro knew or should have known of her impairment.
 Linda Lowe's alcohol and prescription drug problem impaired her
ability to agree to the amount of attorney fees.


 

 This impairment benefited the law firm of Piro & Lilly, L.L.P. and the
individual attorneys.
 Earle Lilly knew or should have known of her impairment.
 Robert Piro knew or should have known of her impairment.
 Robert J. Piro and Earle Lilly did not act in the utmost good faith and
did not exercise the most scrupulous honesty toward Linda Lowe
 Piro and Lilly wrote self serving, untrue letters for Lowe's signature. (Px
17 is the worse [sic] example of the letters, but the letters concerning the
personal relationship between Lowe and Lilly are horrendous also.)
 Lilly's acceptance of the expensive gifts and his personal charging on
Lowe's credit at Hermes was in bad faith.
 Robert J. Piro and Earle Lilly did not place the interests of Linda Lowe
before their own, did use the advantage of their position to gain a benefit
at the expense of Linda Lowe, and placed themselves in the position
where their self-interest conflicted with their obligations as a fiduciary.
 Piro and Lilly wrongfully kept the second payment of the $50,000
retainer. This should have been returned to Lowe or at a minimum tell
Lowe that she had paid the retainer twice and asked for instructions on
it.
 The law firm did not even indicate on its bills that it had kept the second
retainer.
 Robert J. Piro and Earle Lilly did not fully and fairly disclose all
important information to Linda Lowe concerning the fee agreement and
their representation of her.
 Piro & Lilly, L.L.P. did not prepare a written statement describing the
outcome of the matter and the method of determination of their attorney
fee, in violation of their ethical obligations to Lowe. The claim of the
attorneys that they prepared a handwritten statement for the plaintiff, yet
failed to make a copy is not believable. Both attorneys were quite
capable of "papering the file" when it was in their best interest to do so. 
Throughout the course of their representation of Lowe and the trial the
alleged amount recovered for Lowe in the underlying case was ever
changing. The value of the life estate in the house was overstated. Most
astonishing was the claim of the value of the lifetime medical when Mr.
Sarofim and his attorney considered it to be of little value at all. Of
course a written statement outlining the value at the time of the divorce
was essential and failure to provide such a statement is a clear, serious
breach of fiduciary duty.
 Linda Lowe contested the amount of the fee charged.
 Earle Lilly and/or Robert Piro should have told Linda Lowe to consult
another attorney concerning the fee dispute.
 Earle Lilly and/or Robert Piro should have placed the fee in a trust
account until the dispute was resolved.
 The romantic relationship between Lowe and Lilly could have affected
the ability of Lilly to be an effective advocate if the case had not settled. 
Mr. Sarofim and his attorney were aware of the relationship.
 Piro's effectiveness as a witness in contesting the prenuptial agreement
would have been compromised by his financial interest in the outcome.


Conclusions Of Law: 

 

 Fee forfeiture in the amount of $3 million is appropriate under the facts
of this case.
 Both Piro and Lilly breached their fiduciary duty to Lowe.
 The breaches were grave, serious and clear.
 The breaches continued throughout the representation.
 The breaches were willful.
 The breaches did not affect the value of their legal work but would have
if the underlying case had not settled.
 The conduct of the attorneys offends the public sense of justice and
propriety, and forfeiture is necessary.



 Signed March 16, 2000.


 /s/ Tracy Christopher

 Judge Presiding
1. Because Lowe's death does not affect any issue in this appeal, we will refer to
her executor as "Lowe."
2. The lawyers' original issue one also complained about the trial court's
submission of question 1 in the charge. After Lowe pointed out on appeal that
the lawyers did not object to the submission of question 1 at the charge
conference, the lawyers in their reply brief limited their complaint to the trial
court's refusal to disregard question 1. See generally Tex. R. Civ. P. 271-279;
State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex.
1992) (discussing manner of objecting to charge); Mo. Pac. R.R. v. Cross, 501
S.W.2d 868, 873 (Tex. 1973) (holding objections must be made before charge
is read to jury).
3. We limit our review to those subissues properly preserved at trial by an
appropriate trial objection. See Tex. R. App. P. 33(1)(a).